687 So.2d 647 (1997)
STATE of Louisiana, Appellee,
v.
Ted Wayne MOORE, Appellant.
No. 29212-KA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1997.
Michael Courteau, Monroe, for Appellant.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Robert S. Tew, Assistant District Attorney, for Appellee.
*648 Before MARVIN, GASKINS and PEATROSS, JJ.
GASKINS, Judge.
The defendant, Ted Wayne Moore, appeals his conviction for distribution of cocaine. For the following reasons, we affirm.

FACTS
On May 20, 1994, Monroe police officers conducted a "buy-bust" operation wherein an officer and a confidential informant (CI) made cocaine purchases from "street dealers" with marked "buy money" and thereafter directed other officers to arrest the seller. At about 11:00 p.m., Officer Edmiston and the CI drove up to a street corner where the defendant approached their vehicle. They inquired about buying drugs and the defendant instructed them to drive around the block. The CI was wired with a radio transmitter. Officer Edmiston used this device to describe the defendant's dress and appearance to other officers who would later apprehend the defendant. After driving around the block, Officer Edmiston and the CI returned to the corner and purchased one rock of crack cocaine from the defendant for $20 in marked money. Officer Edmiston again described the defendant's dress and appearance to officers on the apprehension team who closed in and arrested the defendant approximately one minute after the transaction. Officer Edmiston returned to the scene within four minutes and positively identified the defendant as the individual who sold him cocaine. Neither the marked "buy money" nor any other contraband was found.
The defendant was arrested and charged with one count of distribution of cocaine. An attorney was appointed to represent the defendant at trial. Before the defendant's trial began, he informed the court that the he wished to represent himself, stating that his lawyer had done nothing to help his case and that he knew the facts of the case better than his attorney. The court conducted an exhaustive discussion with the defendant concerning his understanding of the potential consequences of this decision. The defendant persisted in his request and ultimately the court allowed the defendant to represent himself.
Following a trial by jury, the defendant was convicted as charged. The trial judge subsequently sentenced the defendant to ten years at hard labor, noting that this was his third felony conviction. The defendant, now represented by the same attorney he dismissed at trial, appeals his conviction, arguing that the trial court erred in allowing him to represent himself and arguing that the evidence was insufficient upon which to base his conviction.

SELF REPRESENTATION
The defendant argues that the trial court erred in allowing him to represent himself at trial. He asserts, "it is quite obvious by the record that the defendant was not prepared for trial nor could he have had the necessary intellectual capacity to waive his right to counsel `with eyes open' and aware of the danger of self-representation." This argument is without merit.
U.S. Const. amend. VI, as well as La. Const. art. I, § 13, guarantees the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. White, 325 So.2d 584 (La.1976). The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
Waiver of the right to counsel, in order to be valid, must be made knowingly, understandingly and intelligently. Faretta, supra; Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70 (1962); State v. Strain, 585 So.2d 540 (La.1991). A defendant may waive his right to counsel "if he knows what he is doing and his choice is made with eyes open" and the record reflects his awareness of the dangers and disadvantages of self-representation. Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942); State v. Harper, 381 So.2d *649 468 (La.1980). Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Harper, supra. The determination of whether defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Johnson v. Zerbst, supra; State v. Kennon, 588 So.2d 1348 (La.App. 2d Cir.1991), writ denied, 600 So.2d 634 (La. 1992).
The adequacy of a defendant's self-representation and legal competence are not determinative of a valid waiver of counsel. State v. Kennon, supra. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. DeGrate, 25,732 (La.App. 2d Cir. 3/30/94), 634 So.2d 965, 968, writ denied, 94-1362 (La.10/07/94), 644 So.2d 630.
In State v. Strain, supra, the Louisiana Supreme Court stated:
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver. See Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). While the judge need not inquire into each and every factor stated in the Von Moltke plurality opinion in order to establish a valid waiver of the right to counsel at trial, there must be a sufficient inquiry (preferably by an interchange with the accused that elicits more than "yes" and "no" responses) to establish on the record a knowing and intelligent waiver under the overall circumstances. 2 W. LaFave & J. Israel, [Criminal Procedure, Sec. 11.3 (1984)]; 3 D. Rudstein, C. Erlinder & D. Thomas, Criminal Constitutional Law p 13.04[2][a] (1990). Whether an accused has knowingly and intelligently waived his right to counsel is a question which depends on the facts and circumstances of each case. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).
The record in the instant case is more than adequate under Faretta and Strain to show that the defendant knowingly and intelligently made the decision to represent himself and that the assertion of that right was clear and unequivocal. First, the trial court made clear, in plain language, the potential dangers of self-representation. The court instructed the defendant as follows:
Do you understand, sir, that with no experience in the presentation of evidence that attempting to represent yourself in a trial of this magnitude is a most serious undertaking?... It could well be an extremely serious mistake.
. . . .
Now there are a lot of dangers in self-representation. The practice of law may appear easy from watching television programs or something, but there are a lot of technical rules of evidence that lay persons will not generally have awell, almost never have a good appreciation of as a matter of fact. And so in terms of applying the Code of Evidence in the course of the trial in the examination of witnesses, you aren't likely to be any way near as skilled as Mr. Courteau [defense counsel] is. Do you understand that?
The court also determined that the defendant's attorney had informed him of the dangers of self-representation and then said,
Do you understand that you are overmatched in taking substantial risks in representing yourself?
Next, the court learned the defendant's age, that he had "stopped at the twelfth" grade in school, that he could read and write in English, and that he had never had treatment for any kind of psychological problem. The court also informed the defendant of the maximum penalty he could receive if convicted as charged.
*650 Despite the court's extensive warnings, the defendant insisted upon representing himself. After stating that he planned to testify at the trial, he said:
I intend to tell the truth. If the truth get (sic) me time, then the truth will give me time. But I'd rather for it to be in my hands. I would rather for to have control over my own destiny than to put it in somebody else's hand who ain't going to value my destiny as well as I am.
The defendant then continued:
I want to be able to ask the peoples (sic) against me my questions, not his questions, not your questions, not no one else (sic) questions. My questions. I want to be able to show the jury just what happened and why it happened and how it happened. And I feel that I can't show that with somebody else driving the wheel.
At the close of the hearing, the trial court made the following finding:
Based upon the court's observations of you the Court finds that you are not competent to conduct a trial in the technical sense of the word of knowing the rules of evidence and how to properly conduct a trial. On the other hand, the court finds that you have the intelligence to waive, that is to say give up the right to a lawyer if that's what you ultimately want to do when I get through talking to you here.
The defendant continued to insist upon representing himself. The court then discharged his attorney, but directed the attorney to sit in the back of the courtroom and be available to answer the defendant's questions, if he had any.
The trial court's finding that the defendant validly waived his right to counsel is entirely supported by the record. Upon exhaustive questioning by the trial court, the defendant demonstrated little understanding of court procedure or the rules of evidence. However, these procedural difficulties are not the focus of the inquiry. The defendant was rational and demonstrated that he understood the court's warnings about the perils of self-representation. The defendant plainly and emphatically asserted his desire to present his case in his own way. This right is guaranteed to the defendant in Faretta v. California, supra. The defendant claimed his appointed attorney refused to follow requested strategies in preparing the case. These claims are not supported by the record. However, when warned by the trial court that self representation could be an extremely serious mistake, the defendant responded:
And to put my life in somebody else (sic) hand who don't really care about what's right or what wrong, is a bigger sacrifice. If I'm going to get fifty or forty years, I'd rather get it for myself. I don't want nobody else to get it for me.
The record supports the trial court finding that the defendant knowingly and intelligently elected to waive his right to appointed counsel. The defendant cannot now complain because the trial court granted him the right to represent himself and the result of that decision turned out badly for him. The trial court did not err in allowing the defendant to waive his right to counsel.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that there was insufficient evidence upon which to base his conviction for distribution of cocaine. The defendant contends that this is a case of mistaken identity, that he was not the person who sold drugs to the undercover officer and that his identification by the officer is flawed. In support of this argument, he points out that no "buy money" or contraband was recovered from him at his arrest. He argues that he lived in the area and that he merely stepped outside his residence at an inopportune moment and was wrongfully apprehended by the police. The defendant urges that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found that the essential elements of the crime of distribution of cocaine had been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). This argument is without merit.
The proper method to raise the issue of insufficient evidence is by motion for post-verdict judgment of acquittal pursuant to La.C.Cr.P. art. 821. The record does not *651 indicate that the defendant made such a motion, but does contain an assignment of error which alleges the evidence was insufficient. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), imposes a review obligation on appellate courts when it held that due process protects a defendant from conviction except upon proof beyond a reasonable doubt. Thus, we will address the issue on appeal.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const., art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (1987).
In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Carey, et al, 628 So.2d 27 (La.App. 2d Cir.1993), writ denied 94-0018 (La.03/25/94), 635 So.2d 236; State v. Braswell, 605 So.2d 702 (La.App. 2d Cir.1992).
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Long, 408 So.2d 1221 (La.1982); State v. Smith, 430 So.2d 31 (La. 1983); State v. Ford, 26,422 (La.App.2d Cir. 9/21/94), 643 So.2d 293.
The defendant argues that he was not the person that sold the cocaine and that Officer Edmiston's identification of him as the seller was "flawed" because Officer Edmiston and the apprehending officer, Officer Stansell, gave inconsistent testimony as to where the defendant was located when he was identified by Officer Edmiston. The defendant also contends that, because he did not have the "buy money" or any contraband in his possession when arrested, he was misidentified as the perpetrator of this offense.
Officer Edmiston testified that, after the defendant was apprehended, he returned to the scene to make an identification. Officer Edmiston stated that when he arrived, the defendant was "standing in front of a police unit that was parked in front of the house on Adams street" and at that time, he positively identified the defendant as the individual who had just sold him drugs. Officer Stansell, one of the arresting officers, testified that as they approached the defendant to make the arrest, the defendant was in front of a house in the area of Adams and North 8th Streets. As the police pulled up, the defendant ran "through the back of the house and we actually apprehended him like in the back yard of the house where he made the purchase at." Officer Stansell stated that when Officer Edmiston returned to identify the defendant, the defendant was in the back yard. According to the defendant, this apparent inconsistency in testimony shows that his identification as the perpetrator of this offense is flawed. This apparent contradiction is not of the sort which would warrant the reversal of the jury's decision. The officer's testimony was not internally inconsistent nor is the discrepancy sufficient to raise a reasonable doubt that some other person was the seller. Officer Edmiston testified that the lighting conditions at the location were good and that he could clearly see the defendant. The officer was also able to closely observe the defendant twice before the arrest. Officer Edmiston never wavered in his testimony that the defendant was the person who sold him the cocaine. The brief time frame and the matching radio description of the seller's clothing negate any reasonable probability of misidentification.
Defendant also argues that he was misidentified because he did not have possession of the buy money when he was arrested. Quite possibly, the defendant had stashed his drugs and money in a hiding place and that is the reason he made the officer and CI ride around the block prior to the drug transaction. Another possibility brought out at trial is that offenders often dispose of buy money once they discover that police are in the area.
*652 Officer Stansell testified that the defendant "ran off" when he saw the police unit pull up. The absence of the buy money under these circumstances does not create a reasonable probability of misidentification.
Further, the record established the elements of the offense beyond a reasonable doubt. La.R.S. 40:967 provides that it shall be unlawful for any person knowingly or intentionally to distribute a controlled dangerous substance classified in Schedule II. The substance which Officer Edmiston purchased in connection with this case was determined by a laboratory test to be cocaine, which is classified as a controlled dangerous substance in Schedule II. La.R.S. 40:964.
La.R.S. 40:961(14) provides that "distribute" means to deliver a controlled dangerous substance by physical delivery. La.R.S. 40:964(10) provides that "deliver" or "delivery" means the transfer of a controlled dangerous substance. The following colloquy establishes the delivery element:
Q: (Prosecutor): Did you actually see [the defendant] hand the drugs over?
A: (Officer Edmiston): Yes.
Q: And the twenty dollar rock over?
A: I hadwhen he handed the RCI the rock I had to hand him the twenty dollars.
Q: Okay. Is there any doubt in your mind at all but that Mr. Ted Moore is the one who sold drugs on May 20, 1994 as you've described?
A: No, sir.
The record establishes that the defendant was positively identified as the perpetrator of this offense, negating all reasonable probability of misidentification. Further, all the elements of the offense were established beyond a reasonable doubt.

CONCLUSION
For the reasons given above, we affirm the conviction of the defendant, Ted Wayne Moore.
AFFIRMED.