721 So.2d 956 (1998)
STATE of Louisiana, Appellee,
v.
Christopher DRUMGOLE, Appellant.
Nos. 31294-KA, 31295-KA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*957 Theo J. Coenen, III, Rayville, Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, for Appellee.
Before MARVIN, C.J., and WILLIAMS and GASKINS, JJ.
MARVIN, Chief Judge.
Having been convicted by a jury of distribution of codeine and distribution of a counterfeit controlled dangerous substance and sentenced as a third felony offender to concurrent hard labor terms of 30 and five years respectively, Christopher Drumgole appeals, with appellate counsel, his convictions and sentences after having represented himself in the trial court. La. R.S. 40:968, 971.1; 15:529.1. Drumgole's four assignments question the validity of his waiver of the right to counsel, the sufficiency of the evidence to convict, the legality of the habitual offender adjudication and excessiveness of sentence.
Pretermitting the other assignments and concluding on this record that Drumgole did not knowingly and intelligently waive his right to counsel, we reverse the convictions, vacate the sentences and remand for a new trial.

INITIAL WAIVER OF COUNSEL
Drumgole was arrested on June 27, 1997, and was formally charged with two counts of distribution of counterfeit CDS by bill of information filed in the Franklin Parish district court on July 23, 1997. The bill was later amended to charge one count of counterfeit CDS distribution and one count of distribution of codeine, the offenses of conviction.
The case was originally assigned to Division A of the district court and the public defender for that division was appointed to represent Drumgole. Two other charges were pending against Drumgole in Division B of the same court, however. On motion of the Division A public defender made at Drumgole's arraignment on August 12, 1997, the Division A charges were transferred to Division B and the public defender for that division was appointed to represent Drumgole on all charges. Before being relieved of his duties, the Division A public defender waived formal arraignment and entered a plea of not guilty to all four charges on Drumgole's behalf in Division A, apparently because the judge assigned to Division B was on a temporary leave of absence until September 23.
After the public defender entered the not guilty pleas, Drumgole addressed these remarks to the Division A trial judge, Judge McIntyre:
... I haven't even got a chance to talk with, with my attorney as far as this matter on my plea and arraignment and things, therefore, I mean, I want to defend, I want to defend my own case, therefore, so I have a right to talk and do the things I need to get done. ... I[am] supposed to also have, I guess, my preliminary examination today.... I filed some motions and ... I got ... a letter back ... [setting] my preliminary examination... for today....

(Our emphasis and brackets.)
After asking the prosecutor whether he was prepared to hold the preliminary examination that day, the court conducted this colloquy with Drumgole:
BY THE COURT: All right, do you understand that if I allow you to represent yourself that you're taking on a ...
BY THE DEFENDANT: Yes, I, I.. .... pretty heavy responsibility?
A. I understand that.
Q. And you're willing to accept that responsibility?
A. Yes, I am.
Q. And you feel like you're competent mentally and [in] every other way to handle your case?

A. Yes, I am.

(Our emphasis and brackets.)
Accepting Drumgole's perception of his competence to represent himself, the court did not inquire on the record about Drumgole's age, his educational background, his mental *958 condition, his familiarity with criminal law and procedure, or his understanding of the nature of the multiple charges he faced and the penalty range for each. The court then advised Drumgole of some of the dangers and disadvantages of self-representation:
Q. Do you understand that you will be responsible for objecting to evidence and following the technical rules of evidence to, and questioning witnesses, and making an opening statement and closing argument, and doing several things that only a trained attorney, and many trained attorneys are not really good at doing, but especially someone who's never gone to law school and has not really studied the evidence and procedure would have a very difficult time of doing that, but understanding that, you're still willing to accept that responsibility and waive your right to an attorney?

A. Okay, no, yes I am, but I am also, see, they have me right now, they have transferred me from Franklin Parish to Rayville [in Richland Parish] where I have access to nothing, you know. All right, like [La.C.Cr.P.] Article 511 states that I have a right to defend myself.
Q. When you say you don't have access to anything, what do you mean?
A. I can't get no, I got motions here that I can't get notarized. I have two here that's already notarized that I got notarized before they transferred me ... I also read [that] they should have ... notified the court [72] hours before they transferred me and they just up and transferred me to conditions worse than Franklin Parish.
Q.... All right, ... we're going to take up these [pro se defense] motions [for a preliminary examination, a bill of particulars and discovery] after we take care of everybody else, but let me go back to my original question: Do you want to represent yourself?

A.I want to represent myself.

Q.... Okay, I'm going to relieve Mr. Ellis [the Division B public defender] from representing ... Mr. Drumgole ... as an Indigent Defender[.] Mr. Drumgole will be allowed to represent himself. I feel like he does understand. He apparently has some, some knowledge about the law. He's been filing a lot of motions. So we're going to allow you to represent yourself....

(Our emphasis and brackets.)
The court instructed the public defender to remain in the courtroom to "assist ... and not necessarily represent" Drumgole, who then filed another pro se motion seeking to be transferred back to the Franklin Parish jail:
[A]s far as ... representing myself, I'm going to need access to a law library so I would like to request that ... I stay here in Franklin Parish[.] [As] far as me filing motions to help someone else, I won't do that.... I'm mainly ... based with this here right now, with my case....
Q. All right, let me say this: I'm going to let Judge Roberts [in Division B] make that decision because Judge Roberts is going to be your Judge. It's not going to be me, it's going to be Judge Roberts. So we're going to have you file a motion to be transferred from Richland Parish back to Franklin Parish.... Judge Roberts will hear your motion [when he returns on] September 23rd....
A. All right, but see, yet and still, ... ain't nothing I can get did [sic] there ... in Rayville ... and I'm defending myself, that's why I need to get this did [sic] today.... I'm trying to get my motions tooken [sic] care of.... I don't understand [why] that will be a problem [for] me [to stay in the parish] where I was arrested at, I mean, in this jurisdiction here as to where I got access to a law library and [am] able to defend myself.

Q. Mr. Drumgole? I'm not going to hear... any of your motions today that you're filing today ... because we just don't have the time.

(Our emphasis and brackets.)

LATER PROCEEDINGS

September 24 Motion Hearing
The hearing on Drumgole's motion for a preliminary examination was also deferred until Judge Roberts' return, being held on *959 September 24, 1997. On that day, the prosecutor told the court that Drumgole had appeared before Judge McIntyre in Division A on August 12,
and after the Judge explained the situation and the dangers of representing himself he did make an election at that time to proceed as his own counsel. ... And Judge McIntyre relieved Mr. Ellis as counsel, but appointed him to assist Mr. Drumgole, and that's where we stand today.... And then some of these motions were already pending and some were filed subsequent to that August 12th date.
At the request of the public defender, Mr. Ellis, the court asked Drumgole, "Do you want Mr. Ellis to assist you or would you rather not have Mr. Ellis assisting you?" Drumgole replied, "Well, I'd ratherI can do it, I'm totally capable of doing it myself." The court then relieved Mr. Ellis of any further duty to Drumgole, saying:
... I may be wrong and the Second Circuit may tell me we can't do it like this, but I don't think I can force a lawyer to represent a defendant if the defendant doesn't want [his help].... I don't want to put the lawyer in a bind to get sued later on for something that he can't help [the defendant with] at the present time. I'd rather the Second Circuit just send it back to us and say "No, do it over and this is the way we need to do it next time," and then I'll abide the best I can at that point. So I'm going to relieve Mr. Ellis....

(Our emphasis and brackets.)
The court then began hearing Drumgole's various motions and allowed Drumgole to take written notes without making any further inquiry into the validity of Drumgole's earlier waiver of counsel.
Drumgole had apparently been moved back to the Franklin Parish jail shortly before the September 24 hearing, making it unnecessary to try his motion for a transfer. Drumgole's motion to suppress evidence on the basis of the state's inadequate discovery responses was tried and denied. Drumgole withdrew his motion for a preliminary examination after complaining that the six-week delay in hearing that motion "bought time for the State" to build a stronger case against him while he was in the Rayville jail, without access to a law library or to his witnesses. Addressing Drumgole's assertion that he had been prejudiced by the delay, the court stated, "There's no prejudice shown."

Other Pre-trial Hearings
At the next court hearing on October 16, 1997, the state amended the bill of information to change one of the original two counts of counterfeit CDS distribution to a charge of distribution of codeine in an amount causing it to be classified as a Schedule III rather than a Schedule II CDS. The prosecutor incorrectly stated that the penalty "is actually less for this charge than for the original charge." See and compare La. R.S. 40:968 (not more than ten years for distribution of Schedule III codeine) and § 971.1 (not more than five years for distribution of a counterfeit CDS).
At the October 16 hearing, Drumgole filed a motion to quash and motions for an unsecured bond and a continuance, which were heard and denied on October 22, 1997. In his motion to quash, Drumgole alleged that his right to have access to the courts had been violated by the delay in holding a hearing on his motion for a preliminary examination and by his unexplained transfer from a jail with a law library (in Franklin Parish) to a jail without a law library (in Rayville).

Pre-trial Writ Application
On October 24, 1997, Drumgole mailed a pro se application for a supervisory writ to this court, complaining of the trial court's rulings on his various pre-trial motions. The writ application was filed in this court on November 10 and denied on November 19 for noncompliance with URCA Rule 4-3. In the writ order, this court noted that "this incomplete record does not show a proper waiver of counsel" and set forth the guidelines for securing a valid waiver as explained in State v. Strain, 585 So.2d 540, 542 (La.1991):
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused's age, education and mental condition, and should determine according to the totality of the circumstances whether the accused *960 understands the significance of the waiver. See Von Moltke v. Gillies, 332 U.S. 708, 68 S.Ct. 316, 92 L.Ed. 309 (1948). While the judge need not inquire into each and every factor stated in the Von Moltke plurality opinion in order to establish a valid waiver of the right to counsel at trial, there must be a sufficient inquiry (preferably by an interchange with the accused that elicits more than "yes" and "no" responses) to establish on the record a knowing and intelligent waiver under the overall circumstances....
The record before this court at the time of the writ application contained a transcript of the September 24, 1997 motion hearing before Judge Roberts, who was simply informed by the prosecutor that Drumgole had elected to represent himself at his arraignment on August 12 after Judge McIntyre "explained the situation and the dangers of representing himself." The August 12 transcript was not included in the writ record.
Reviewing the September 24 colloquy between Drumgole and Judge Roberts, which dealt primarily with the practical problems involved in appointing a lawyer to represent a criminal defendant who desires to represent himself, this court, on November 19, 1997, concluded:
Obviously, this colloquy is insufficient [to establish a valid waiver of counsel under Strain]. Before proceeding further, the trial court shall review the record and insure a proper waiver of counsel is made.

(Emphasis and brackets supplied.)
Unfortunately, Drumgole's case was tried to a jury on November 3-4, 1997, a few weeks before this court rendered its instructions to the trial court in the November 19 writ order. Judge Roberts, the presiding trial judge, allowed Drumgole to represent himself at trial based on Drumgole's earlier purported waiver of counsel at his arraignment before Judge McIntyre without any further inquiry on the self-representation issue. The jury found Drumgole guilty as charged.

Habitual Offender Adjudication
After Drumgole's trial, the state brought habitual offender proceedings seeking to enhance the sentences. Drumgole requested and was appointed counsel, who objected to the habitual offender bill on several grounds including the lack of a valid waiver of counsel. After a hearing before Judge Roberts on January 13, 1998, the trial court made these findings:
[Y]ou're actually a fourth felony offender,... you have ... previous conviction[s] of simple burglary, ... simple escape, and... attempted possession of cocaine. You also have the two ... jury convictions, ... distribution of imitation cocaine and distribution of codeine. I am not going to use those convictions as an enhancement of this sentence ... [because] ... there was a ruling by the Second Circuit that there was not a proper waiver [of counsel], and... what was furnished to the Second Circuit was the colloquy that I had with you in open Court. I understood at the time that Judge McIntyre had covered the same issue with you previously, and that may be sufficient, that may have been a sufficient waiver of counsel, but I'm not convinced in my own mind that it is, therefore I'm electing not to use this latest conviction as an enhancement.

(Our emphasis and brackets.)
While disregarding the present offenses for purposes of calculating Drumgole's multiple offender status under La. R.S. 15:529.1 on the basis of the questionable waiver of counsel, the court simultaneously sentenced Drumgole for those same offenses, finding Drumgole to be a third rather than a fourth felony offender and imposing an enhanced 30-year sentence for cocaine distribution (La. R.S. 40:968, 15:529.1), with a concurrent five-year sentence for distribution of a counterfeit CDS (La. R.S. 40:971.1).
Drumgole argues on appeal that his waiver of counsel was invalid, and that this defect amounts to reversible error in his convictions, his habitual offender adjudication and his sentences.

DISCUSSION
The validity of a purported waiver of counsel is determined by the record of the colloquy conducted with the defendant at the time the waiver is accepted by the trial court. *961 State v. Moore, 29,212 (La.App.2d Cir.1/22/97), 687 So.2d 647. Having found the brief self-representation colloquy at Drumgole's September 24 motion hearing legally ineffective, we now review the colloquy at the August 12 arraignment containing the purported waiver of counsel which was presumed valid at all subsequent hearings, including the trial.
Under the guidelines of Strain, supra, the record of a defendant's purported waiver of counsel must affirmatively show that the waiver is not only voluntary, but also knowing and intelligent. The record must show that the defendant is aware of the nature of the charges and the penalty range, and of his right to counsel, at no charge to him if he is indigent. The nature, complexity and seriousness of the charges has a bearing on the extent of the judicial inquiry required for a valid waiver: A more thorough inquiry is required to allow a defendant to represent himself at a felony trial than is required to accept his uncounseled guilty plea to an uncomplicated misdemeanor. 585 So.2d at 543-44.
Among the factors bearing on the defendant's competence to understand the significance of the waiver are the defendant's age, educational background, mental condition, past experience with legal matters and conduct during the present proceeding. This information should be explicitly stated on the record and may be elicited by direct questioning of the defendant. The trial court must also advise the defendant of the dangers and disadvantages of self-representation, again considering the nature, complexity and likely manner of disposition of the charges (trial or plea). Id.
Drumgole faced multiple felony charges which were to be disposed of by trial, some of which involved a co-defendant. At the August 12 arraignment on the present charges, the trial court advised Drumgole that self-representation at trial was "a pretty heavy responsibility" and explained some of the dangers and disadvantages of proceeding without a lawyer. The court did not, however, inquire about Drumgole's understanding of the charges against him and the potential penalties he faced if convicted, or elicit any objective information about Drumgole's age, his educational background, his mental competence or the degree of his familiarity with criminal law and procedure.
The only direct questions asked of Drumgole by the court were, "Do you want to represent yourself?" and "[Do] you feel like you're competent mentally and [in] every other way to handle your case?" The court accepted Drumgole's answers without further questioning, notwithstanding Drumgole's assertion at the same hearing that he had been moved to a jail which did not have a law library. The court's conclusion that Drumgole "apparently has some knowledge about the law" was based solely on the fact that he had "fil[ed] a lot of motions" before being transferred to the Rayville jail.
Apart from establishing that Drumgole is able to read and write and was advised of some of the dangers and disadvantages of self-representation, this record affirmatively shows only Drumgole's desire to represent himself and his subjective perception of his general competence to do so. While these matters arguably suggest that Drumgole's waiver of counsel was voluntary, they give no objective basis for assessing whether the waiver was knowing and intelligent, additional requirements for a valid waiver under Strain and other state and federal decisions.
Considering the totality of the circumstances presented in this record, we must conclude that Drumgole's waiver of counsel was invalid. See and compare Strain and Moore, cited supra, and State v. Mahogany, 96-1137 (La.App. 4th Cir.4/30/97), 694 So.2d 505, writ denied.

DECREE
We reverse the convictions and vacate the habitual offender adjudication and the sentences, remanding for a new trial.
GASKINS, J., concurs in the result.