743 So.2d 685 (1999)
STATE of Louisiana
v.
April GEORGE.
No. 98-KA-1149.
Court of Appeal of Louisiana, Fifth Circuit.
March 30, 1999.
*686 Bruce G. Whittaker, Louisiana Appellate Project, Gretna, for Defendant/Appellant.
Paul D. Connick, Jr., District Attorney, Rebecca J. Becker, Terry Boudreaux, Walter G. Amstutz, Joan Benge, Assistant District Attorneys, Gretna, for Plaintiff/Appellee.
Panel composed of Judges EDWARD A. DUFRESNE, Jr., THOMAS F. DALEY, and SUSAN M. CHEHARDY.
DALEY, J.
The defendant, April George, was charged with armed robbery in violation of LSA-R.S. 14:64. She entered a plea of not guilty and requested that she be allowed to represent herself. After a hearing on the matter, the trial court granted the defendant's motion.
The defendant, representing herself with defense counsel assigned to assist her, proceeded to trial before a jury of twelve on November 17, 1997. On the first day of trial, a jury was selected, after which defendant addressed the Court. She first requested that the court intervene with the jail to alter the time she received her medication. She also admitted involvement in the alleged crime and asked the trial judge to try the case without the jury. After the defendant's comments, trial was recessed for the day and the trial judge advised the defendant she would have to consult with her associate *687 counsel to decide whether she wanted a bench trial or jury trial, and advise the court of her decision before the start of court the next day. The next day, the defendant determined she was not capable of proceeding on her own behalf, and moved for a mistrial. The trial court granted the motion and appointed associate counsel as defense counsel. Defense counsel filed a motion to continue, which was denied, and then filed a motion to appoint a sanity commission, claiming the defendant was incompetent to stand trial. A sanity commission was appointed. Following a report from the sanity commission and a hearing, the trial court found Ms. George competent to stand trial.
The defendant's motion to recuse the trial judge was denied and a second jury trial began. At the conclusion of the trial, the jury found the defendant guilty as charged. She was sentenced to thirty years at hard labor, without benefit of parole, probation or suspension of sentence. She filed a motion for appeal, and a motion to reconsider sentence. The court heard the defendant's motion to reconsider sentence, and reduced her sentence to twenty-five (25) years.
The state filed a multiple offender bill of information, alleging the defendant to be a fourth felony offender. At arraignment, the defendant denied the state's allegations. At the multiple bill hearing, the prosecutor produced evidence as to only one of the predicate convictions alleged in the multiple offender bill, and noted the state's intention not to prove the other two predicate offenses. The court thereafter found the defendant to be a second felony offender, and imposed a sentence of one hundred fifty (150) years at hard labor without benefit of parole, probation or suspension of sentence. The defendant's motion to reconsider the multiple offender sentence was granted and the trial court reduced the defendant's sentence to ninety-eight (98) years. The defendant has appealed her conviction and sentence.

FACTS:
At trial, the victim, 68-year-old Jacob Horn, testified that at 6:00 on the morning of December 6, 1996, he heard someone knocking on the door of his Metairie apartment. He opened the door to find Gina Carona, another resident of the apartment complex, whom he had met and befriended two weeks earlier. Ms. Carona was accompanied by a short, stocky black woman who was unknown to Mr. Horn. He let Carona inside, but did not allow her companion to enter.
Mr. Horn testified that Ms. Carona grabbed him around the neck and opened the door to the other woman. The black woman hit Mr. Horn in the head with her fist, then they dragged him into his bedroom and threw him to the floor. The black woman took a knife from her pocket. The knife had a red handle and a three-inch blade. The black woman held Mr. Horn down by sitting on top of him while Ms. Carona searched the apartment for valuables. Mr. Horn told the women that he would give them money. The unknown woman put the knife's blade to his neck and said, "If you don't stop talking, I'll kill you now." Mr. Horn testified the women took two chains from his neck, a case containing three credit cards, two blank checks, an automatic teller machine card, and about three hundred dollars ($300.00) in cash. The perpetrators bound Mr. Horn's hands and feet, and tied a plastic bag over his head. They then left the apartment.
Mr. Horn managed to work his hands free, and to remove the plastic bag. He called police, and identified Gina Carona as one of the perpetrators. However, he was unable to identify the second perpetrator from a photographic lineup.
Detective David Yenari testified that he arrested Gina Carona on December 16, 1996. Ms. Carona initially denied there was a second person involved in the robbery. However, when Ms. Carona was interviewed again, on June 30, 1997, she admitted that a woman named April had *688 helped her to rob Jacob Horn. Ms. Carona identified the defendant, April George, as the co-perpetrator from a photographic lineup. This led to the arrest of Ms. George.
Gina Carona testified for the state at trial in exchange for a reduced charge of first degree robbery. She stated that she had met Mr. Horn two weeks before the robbery at the apartment complex where they both resided. Mr. Horn let her know he was financially well off, and had no one to take care of him. At the time Ms. Carona was a crack cocaine addict, and needed money to buy drugs. The night before the robbery, she met the defendant at a house on Ursuline Street in New Orleans where they both smoked crack. Ms. Carona took the defendant to Mr. Horn's apartment with the intention of obtaining money to sustain their drug habits. Ms. Carona testified that she asked Mr. Horn for money. When he refused, she and the defendant attacked him. According to Ms. Carona, they took Mr. Horn's chain, the contents of his wallet, and about two hundred fifty dollars ($250.00) in cash.
Ms. Carona testified that she saw the defendant the day after the robbery, at which time the defendant threatened her with a pocket knife. The knife was described as a pocket knife with a red handle. Ms. Carona further testified that she lied in her first statement when she said she committed the robbery alone. She was afraid to reveal the defendant's identity at first, fearing what the defendant might do to her.
Alibi witness Yacanette Nixon testified that the defendant was with her at their home on Ursuline Street on the morning of December 6, 1996. She testified that she gave defense counsel that information "a couple of days" before trial.

DISCUSSION
In her first assignment of error, the defendant contends the trial court erred in admitting into evidence portions of a transcript of a conversation that she had with the trial judge at a prior court proceeding. The defendant first claims the statement was inadmissible. In the alternative, she argues she was entitled to have the jury hear the statement in its entirety.
This statement was made by the defendant during her first trial on November 17, 1997. After the completion of jury selection, the defendant addressed the court out of the jury's presence. The judge was on the bench, and the conversation was recorded by the court reporter. Ms. George first told the judge she wished to be given her "psych medication." The judge responded that the defendant could only be given her medication as prescribed by her doctor. The defendant went on to discuss her medical condition, stating she had been in a mental institution as a child.
The defendant then began to talk about the charged offense, and admitted her involvement in the robbery. The judge cautioned her that the prosecutor was present. The judge and prosecutor then discussed with Ms. George the penalty she could face if convicted. The judge explained that she had the right to a jury trial, but that she could waive that right and request a bench trial. The judge also told the defendant she should consider whether or not she wished to testify on her own behalf. The defendant said she understood "everything."
At the beginning of the defendant's second trial, the state filed a written notice of its intention to introduce a transcript of the November 17, 1997 discussion. The defense had already filed a Motion in Limine and Motion to Suppress Evidence, urging the court to order the state to refrain from introducing the transcript. The trial court heard and denied the defendant's motion. The judge edited the statement before it was admitted into evidence. Defense counsel objected to some, but not all, of the deletions.
The defendant's primary argument is that she made the remarks at *689 issue without the advice of counsel, as the trial court improperly allowed her to represent herself during her first trial. She essentially claims she was unaware of the ramifications of self-representation, and consequently, was uninformed as to the consequences of speaking out in open court. For these reasons, the defendant contends the statement should have been suppressed in its entirety.
Because an accused managing his own defense relinquishes many of the traditional benefits associated with the right to counsel, he or she must knowingly and intelligently forego those benefits in order to represent himself. See Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). Although no minimum requirements have been established for judging the sufficiency of a waiver of counsel, there must be a reasonable inquiry to establish on the record a knowing and intelligent waiver under the overall circumstances. See State v. Strain, 585 So.2d 540 (La.1991); State v. Guccione, 96-1049 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060.
The record does not contain a transcript of the defendant's Faretta hearing. However, the minute entry of November 17, 1997 reflects the following:
The court advised the defendant of her constitutional rights, including her right to an attorney. The defendant waived her right to an attorney and requested to represent herself at trial. The court granted defendant's request to represent herself and appointed Mr. Anthony Angelette to assist defendant in her defense.
During the hearing on the defendant's Motion to Suppress, the trial judge stated:
Ms. George moved to have Mr. Angelette withdraw as her counsel and to represent herself, which she has a right to do under the Sixth Amendment of the Unites States Constitution. However, Ms. George must be able to effectively represent herself.
At that point, the Court engaged in a lengthy colloquy with Ms. George in order to ascertain that Ms. George could effectively represent herself, and I was convinced that she could based upon her statements at that time in response to detailed questioning.
The defendant now argues that the statement made by her while she was representing herself was inadmissible because she was improperly allowed to represent herself. However, the question of whether a defendant properly waived his or her right to counsel should not be judged on what happened subsequent to the waiver of counsel. State v. Moore 29,212 (La.App. 2nd Cir. 1/22/97), 687 So.2d 647. Rather, it is the record made in waiving the right to counsel that is determinative of whether this right was properly waived. Id. After reviewing the record presented to this court, we find no basis to support the defendant's position that she was not properly allowed to represent herself when the statement was made.
The defendant also argues that her statement was made without right to counsel. The statements were not coerced, nor were they made in response to interrogation. Rather, they were spontaneous and voluntary utterances. Generally, spontaneous statements, not given as a result of police interrogation or compelling influence are admissible as evidence without Miranda warnings, even where the defendant is in custody. State v. Castillo, 389 So.2d 1307 (La.1980); State v. Pardon, 97-248 (La.App. 5 Cir. 10/15/97), 703 So.2d 50. Moreover, the record shows the defendant was not wholly without the assistance of counsel during the first trial. Attorney Anthony Angelette, who was appointed by the court to assist the defendant, was present when she made the statements at issue. Thus, defendant's argument that the statement was made without right to counsel is without merit.
*690 The defendant argues that, if the statement was not suppressible, it should have been admitted in its entirety.
LSA-R.S. 15:450 provides:
Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford.
This rule is not absolute, in that it may be waived by the defendant and reference in the statement to other crimes may be extracted. State v. Bolden 95-749 (La. App. 3rd Cir. 4/17/96), 680 So.2d 6. However, the state may not edit a statement to make it more inculpatory. State v. Caldwell 28,514 (La.App. 2nd Cir. 8/21/96), 679 So.2d 973.
The transcript was edited in such a way that it was not evident that the statements were made in court, or that the defendant was speaking to the judge. At trial, the defendant did not object to all deletions in the statement. Rather, defense counsel objected to the exclusion of references to her psychiatric medication. The trial court attempted to leave in statements relative to the medication, but these statements were intertwined with defendant's reference to incarceration, which the defendant agreed should be excluded. The trial court then concluded that references to psychiatric medication were not relevant, since a sanity commission concluded the defendant was competent to stand trial.
We have reviewed both the edited and unedited versions of Ms. George's statement. The edited version is not more inculpatory or prejudicial to the defendant. Thus, we find no error in the trial court's admission of the edited version.
Also assigned as error are any and all errors patent on the face of the record. The record, including the multiple offender proceeding, was reviewed for errors patent in accordance with Louisiana Code of Criminal Procedure art. 920, State v. Oliveaux, 312 So.2d 337 (La.1975), and State v. Godejohn, 425 So.2d 750 (La.1983).
It was noted that although the commitment as to the defendant's enhanced sentence states that the trial court vacated the original sentence and the amended sentence, the transcript does not reflect this. The trial court further failed to vacate the defendant's earlier sentence on June 3, 1997, when the habitual offender sentence was reduced from 150 years to 98 years. It is well settled that where the transcript and the minute entry conflict, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Because the original sentence, as amended, is still in place, we must remand this case for resentencing on the multiple bill.
We also note the trial court failed to advise the defendant of the three-year limitation for applying for post conviction relief, as required by LSA-C.Cr.P. art. 930.8. At re-sentencing, the trial court must advise the defendant of this three-year limitation.
For the foregoing reasons, the defendant's conviction is affirmed and this matter is remanded for re-sentencing.
CONVICTION AFFIRMED; REMANDED.