STEWART, J.
hThe defendant, Kevin Morris, was convicted of possession of a firearm by a convicted felon, sentenced to 15 years without benefits, and fined $1,000. He argues that the trial court erred in not allowing him to represent himself and in imposing an excessive sentence. We find no merit in the defendant’s arguments, but we do find that the sentence is illegally lenient. Thus, we affirm the defendant’s conviction, and we affirm his sentence, as amended to specify that the 15 years are to be served at hard labor.
FACTS
On November 16, 2002, the defendant entered his stepsister’s apartment and immediately began hitting Natasha Webb, his girlfriend and mother of his child. Annette Edwards, defendant’s stepsister, called the police. In the meantime, Harold Williams, who was also at Edwards’ apartment, tried to get the defendant to leave. The defendant threatened Williams by stating that he “had heat” for a person like him.
Officers Doyle Bell and Debbie Bell were dispatched to the apartment. Doyle *747 Bell encountered the defendant as he was leaving the apartment. The defendant cursed at Doyle Bell and then ran when Bell ordered him to stop. Bell followed him behind the apartment where he saw the defendant hand a pistol to a male child and tell him to “give it to his dad.” The child was the defendant’s 10-year old brother, Randy Morris. Bell caught the defendant and found a box of .357 magnum cartridges while searching him. Bell then told Officer Debbie Bell to get the gun from Dorris Morris, the defendant’s father who was parked nearby and to whom Lthe child brought the gun. Debbie Bell asked Dorris Morris for the gun. After pausing a minute, Morris finally reached under the car seat and handed the gun to Debbie Bell. Later at trial, both Dorris Morris and Randy Morris testified that Randy found the gun while using the bathroom behind a trash can and that he brought the gun to his father.
The defendant was initially found incompetent to stand trial by order of the court on November 25, 2003. On June 2, 2004, the state filed a motion for another competency hearing after receiving prima facie evidence that the defendant was competent to stand trial. At a hearing on June 23, 2004, the trial court ordered another evaluation of the defendant by the original examiners. The trial court also appointed new counsel for defendant at his request. Thereafter, the defendant was found competent to stand trial, which took place on January 24-25, 2005.
On the first day of trial,, the defendant stated that his attorney was not doing what he wanted him to do and that he did not want his attorney representing him. He then agreed to continue with counsel. In the middle of the state’s case, he complained about counsel again and stated that he wanted to personally question witnesses. However, he stated again that “[fit’s all right” when asked his opinion of continuing with counsel. On the morning of the second day of trial, he stated that he wanted to dismiss his lawyer or continue representation with the right to question his own witnesses. However, he subsequently agreed to continue with representation. When defense counsel stated that he had no questions for one of the state’s witnesses, the defendant asked “to dismiss this lawyer.” 13After much discussion, the trial court initially agreed to allow the defendant to represent himself, but then changed its opinion after further discussion with the defendant.
Trial continued, and the defendant was found guilty as charged. On April 13, 2005, he was sentenced to 15 years without benefits and fined $1,000. A motion to reconsider the sentence was denied, and this appeal followed.
DISCUSSION

Denial of Self-Representation

The defendant argues that the trial court erred in denying his repeated, unequivocal requests to dismiss counsel and represent himself. He asserts that the trial court discouraged self-representation, cajoled him into continuing with counsel, and threatened to have him removed from the courtroom if he did not cooperate. He claims that the question was not his competency to represent himself, but his competency to waive counsel. He asserts that the trial court confused these issues in its concern about his lack of trial expertise and thus deprived him of his Sixth Amendment right to self-representation.
The state asserts that defendant made neither unequivocal nor timely requests to waive counsel. Moreover, he failed to knowingly and intelligently waive his right to counsel. The state further contends that defendant’s timing in seeking to dis *748 miss counsel, particularly after the trial court had once already granted a change of counsel, was merely a delay tactic.
|4U.S. Constitutional Amendments VI and XIV, as well as Louisiana Constitution article I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. White, 325 So.2d 584 (La.1976); State v. Flanagan, 32,535 (La.App.2d Cir.10/29/99), 744 So.2d 718. The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of counsel, in order that an accused may enter into pro se representation, must be clear and unequivocal. Id.; State v. Hegwood, 345 So.2d 1179 (La.1977). In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly, and intelligently. Faretta, supra. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that “he knows what he is doing and his choice is made with eyes open.” Faretta, supra, citing Adams v. United States, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942).
 Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, 03-3400 (La.3/26/04) 871 So.2d 347; Flanagan, supra. The determination of whether the defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused.
The adequacy of a defendant’s self-representation and legal competence are not determinative of a valid waiver of counsel. State v. Kennon, 588 So.2d 1348 (La.App.2d Cir.10/30/91), writ denied, 600 So.2d 634 (La.1992); State v. Held, 32,610 (La.App.2d Cir.12/10/99), 748 So.2d 608. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. Strain, 585 So.2d 540 (La.1991); State v. Drumgole, 31,294 (La.App.2d Cir.10/28/98), 721 So.2d 956. In State v. Strain, supra, the Louisiana Supreme Court stated:
The judge, in accepting a waiver of counsel at trial, should advise the accused of the nature of the charges and the penalty range, should inquire into the accused’s age, education and mental condition, and should determine according to the totality of the circumstances whether the accused understands the significance of the waiver.
Whether an accused has knowingly and intelligently waived his right to counsel is a question which depends on the facts and circumstances of each case. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Strain, supra. A more thorough inquiry is required to allow defendant to represent himself at a felony trial than is required to accept his uncounseled guilty plea to an uncomplicated misdemeanor. Strain, supra.
*749 In State v. Seiss, 428 So.2d 444 (La.1988), the Louisiana Supreme Court held that absent a justifiable basis, there is no constitutional right to make a new choice of counsel on the very date the trial is to begin, particularly when there is the attendant necessity of a continuance. Once the trial date has arrived, the question of withdrawal of counsel rests with the sound discretion of the trial court, and his ruling will not be disturbed in the absence of a clear showing of an abuse of discretion. Id.
The facts show that at the second competency hearing, the defendant said, “I don’t want this man to be my counsel.” The trial court appointed Brian McRae as new counsel for defendant, noting that McRae had “a background in psychology.” On the first day of trial, the defendant asked if he could address the court. He was told to talk to his lawyer, and the record indicates that he did so. Shortly thereafter, the defendant objected twice to a statement made by the prosecutor. The defendant then argued that his counsel was failing to effectively represent him, stating “[h]e ain’t doing what I’m telling him to do.” The trial court explained that his counsel had to decide “on what to file or not to file” and suggested that defendant “get with Mr. McRae and y’all get together and defend yourself in this particular trial.”
After a plea of not guilty was entered, the defendant stated, “I don’t even want this cat to represent me. If I loose [sic ] on my own it don’t even matter no more.” He complained that his attorney was not doing what he wanted him to do and that he wanted counsel to ask what he wanted asked. The trial court suggested that the defendant write his questions during l7testimony and pass those questions to counsel. The trial court asked if the defendant could proceed with counsel. The defendant replied multiple times, “Yes, sir.”
After the testimony of Officers Doyle and Debbie Bell, the defendant complained about the questions being asked by counsel. He stated that his attorney did not know what happened and that he wanted “stuff be [sic ] said to the witness that ain’t [sic ] been said.” He also stated that he wanted to question his father. The trial court asked the defendant if he had given counsel written questions, and the defendant replied that he had. Then the trial court stated, “And you haven’t indicated to [sic ] far that we had an issue here. So, I was assuming that everything was going okay.” The defendant responded, “It’s all right.”
On the morning of the second day of trial, the defendant asked to have his lawyer dismissed. He explained:
I want to be able to question my witness. I got to. Something not coming out right. I got a right to defend myself, with assistance of my counsel. I got that right.
The defendant then stated again that counsel could continue to represent him but that he wanted to question his witnesses. The defendant complained that witnesses were lying, and he stated that he could show that everything was a lie. The trial court explained to him that the state had not yet finished presenting its side of the case and advised him to confer with his counsel about testifying when it came time for him to present his side of the case. The trial court also reminded the defendant to write his questions |son paper and agreed to remove the jury, if needed, to allow him to confer with counsel prior to counsel questioning a witness.
After the state presented the testimony of Mark Smith, a former employee of the Department of Corrections, to establish the defendant’s felon status, defense coun *750 sel stated that he had no questions for the witness. However, the defendant stated that he had a question. The jurors were removed from the courtroom. The defendant then asked to dismiss his lawyer and stated that he wanted to question witnesses. The trial court asked the defendant to state for the record the questions he wanted counsel to ask. The defendant stated:
I want him to ask questions like, do he know me? Do Stuart Shaw know me personally. Just because I did something bad in the past, that’s old. I done changed. I want the jury to hear this. I’ve been in here for two years, don’t nobody know me. I been doing a whole lot of things. Just because things happened in the past don’t mean you judge me according because of [sic ] the past, for the future. No, that’s not right. You gotta judge me righteous judgment. I’m talking about not according to appearance, but righteous. I know a couple of ya’ll read the Bible. That’s in the Bible.
The defendant continued to insist that he had the right to question his witnesses with counsel’s assistance, and he referred to a trial he saw where the defendant questioned witnesses. The trial court explained that the defendant in that case represented himself, so the defendant stated that he now wanted to represent himself and that he was firing his attorney. After expressing concerns that the defendant would not ask relevant questions, would testify instead of question witnesses, and would prejudice his case, the trial court finally stated, “I’m going to advise you against it, but if that’s what you want to do, we’ll do it.” The trial court cautioned the defendant | flthat the trial would not be used to teach him the law. The trial judge then began to advise the defendant of the dangers and disadvantages of self-representation and question him about his education. The trial court asked McRae to assist the defendant during trial.
Still outside the presence of the jury, the defendant asked to file a motion for discovery. The trial court denied the request but suggested that the defendant proffer it. The defendant declined to do so. The defendant then told the court that he wanted to read a case to the jury prior to closing arguments, and he presented jury charges to the trial court. The trial court expressed misgivings about the defendant representing himself, noting that the defendant did not understand the concept of jury charges and that the defendant’s proposed jury charge was “out of left field.” The trial court then questioned the defendant further to assess his competency. The defendant said he was not on any medication. He showed the trial court a list of questions he wanted his attorney to ask and claimed that the attorney was not asking them like he wanted them asked. The trial court stated, “The problem is every single time you’ve brought something up, Mr. Morris, you’ve got in to testifying.” The trial court finally determined that the defendant was not “to the level” to represent himself.
The trial court told the defendant that he would have to cooperate with counsel and “let him continue representing.” The court stated that if the defendant refused to cooperate and “go through this trial,” there would be no choice except to remove him from the courtroom. The defendant replied, ‘Tour honor, man, you know you wrong, brother.” He began |inpacking his things, but then he decided to let counsel represent him, stating, “Sounds good.” The trial court ordered McRae “to look at every one” of the questions the defendant submitted.
A waiver of counsel must be done in a reasonable manner, at a reasonable *751 time, and at the appropriate stage of the proceedings. In the present case, the defendant waited until the first day of trial to state dissatisfaction with McRae as his counsel. His statement about the possibility of losing on his own does not appear to be a clear and unequivocal expression of a desire to represent himself. Instead, it seems to be an obfuscated request to again substitute appointed counsel coupled with general apathy. Even if it could be construed as a clear and unequivocal request to represent himself, the defendant agreed to continue proceedings with counsel.
The defendant did not express a clear wish to represent himself until after defense counsel stated he had no questions for one of the state’s last witnesses, Mark Smith. The trial court proceeded in a line of questioning and leaned toward allowing the waiver of counsel before deciding that the defendant lacked the ability to make such a waiver knowingly and intelligently. The trial court’s statement that the defendant would have to be removed from the courtroom if he refused to cooperate with counsel does not appear to be a threat or attempt to coerce the defendant. It was merely the trial court exercising proper discretion in maintaining orderly procedure after having denied the defendant’s request to continue without counsel.
I^The state cited State v. Bridgewater, 00-1529 (La.1/15/2002), 823 So.2d 877, cert. denied, 537 U.S. 1227, 123 S.Ct. 1266, 154 L.Ed.2d 1089 (2003); and State v. Hypolite, 04-1658 (La.App. 3d Cir.6/1/05), 903 So.2d 1275, in support of its contention that the defendant’s timing indicates that the request was merely a delay tactic. In Bridgeivater, supra, the defendant’s request to waive counsel was made on the eve of trial and was therefore found to be a dilatory tactic. The Louisiana Supreme Court held that the court did not err in denying that defendant’s waiver of counsel. Hypolite, supra, is a third circuit case which relied on the ruling in Bridgewater, supra, in upholding the trial court’s denial of waiver of counsel when the defendant made his request as the state was about to call the last witness in its case-in-chief. Also in State v. Ormond, 00-1371 (La.App. 5th Cir.4/24/01), 786 So.2d 187, no error was found in the trial court’s denial of waiver of counsel when defendant’s only clear and unequivocal request for pro se representation was made on the day of trial. Furthermore, a trial court must be permitted to distinguish between a manipulative effort to present particular arguments and a sincere desire to dispense with the benefits of counsel. Bridgewater, supra at 895, quoting U.S. v. Frazier-El, 204 F.3d 553, 560 (4th Cir.2000), cert. denied, 531 U.S. 994, 121 S.Ct. 487, 148 L.Ed.2d 459 (2000).
While the trial court perhaps should not have wavered in its decision on this issue, the change in opinion occurred while the court was trying to act fairly and in the best interest of the defendant, ensuring that his constitutional rights were protected while balancing the need for orderly | iaprocedure. The record does not reflect a clear and unequivocal request for pro se representation until one of the last witnesses for the state was testifying. The defendant’s explanation about what he wanted to ask the witness shows his request to be more of a “manipulative effort to present particular arguments” than a “sincere desire to dispense with the benefits of counsel.” Id.
Considering the disruptive nature and dilatory consequences of a request for pro se representation made during trial, the trial judge did not abuse his discretion in denying the request. The judge allowed the defendant to actively participate, with his appointed counsel, in his defense. This assignment is without merit.

*752
Excessive Sentence

The defendant argues that the maximum penalty imposed in this case was “clearly extreme.” The state claims that the sentence was within the penalty range and supported by the defendant’s extensive criminal history, which was discussed by the court at sentencing.
Whoever is found guilty of possession of a firearm by a convicted felon shall be imprisoned at hard labor for not less than 10 nor more than 15 years without the benefit of probation, parole, or suspension of sentence and'be fined not less than $1,000 nor more than $5,000. La. R.S. 14:95.1(B). When a defendant’s motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).
113A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158; State v. Lingefelt, 38,038 (La.App.2d Cir.1/28/04), 865 So.2d 280, writ denied, 04-0597 (La.9/24/04), 882 So.2d 1165. As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App.2d Cir.8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2d Cir.1991).
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988). There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, 2000-1467 (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const, art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
*753 The defendant filed a motion to reconsider that alleged only excessive sentence; therefore, he is relegated to a claim of constitutional excessiveness. The defendant received the maximum sentence for possession of a firearm by a convicted felon. At sentencing, the trial court reviewed the pre-sentence investigation report. The defendant was a third felony offender, having previously pled to attempted simple burglary and then a reduced charge of aggravated battery when charged with attempted 11fifirst-degree murder. He also pled guilty to operating a motor vehicle while intoxicated and was given a suspended sentence. The trial court described the defendant’s juvenile and adult criminal history as “dismal at best.” The trial court stated that there was an undue risk that during a period of suspended sentence or probation the defendant would commit another crime, that a lesser sentence would deprecate the seriousness of the offense, and that the defendant was in need of correctional treatment. The trial court described the defendant as a “dangerous person” and found no mitigating factors.
For the reasons stated by the trial court, we find that the sentence was not excessive. Though the minutes indicate that the sentence was imposed with hard labor, the judge failed to specify that the sentence would be served at hard labor as required by the statute. When there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732 (La.1983). Because the judge failed to state that the time was to be served at hard labor, the sentence is illegally lenient. La. C. Cr. P. art. 882(A) states that an illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. Therefore, we amend the sentence to reflect that the 15 years are to be served at hard labor.
The defendant’s final assignment requested review for errors patent. This request is unnecessary since such a review is made automatically in all criminal cases. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556. As noted above, the sentence was illegally lenient. No other errors were found.
CONCLUSION
Because we find that the trial court did not err in denying the defendant’s request to represent himself, we affirm the conviction. We also find that the sentence was illegally lenient, but not excessive. Therefore, we amend the sentence to reflect that the defendant serve 15 years at hard labor without benefits.
CONVICTION AFFIRMED. SENTENCE AFFIRMED AS AMENDED.