614 So.2d 955 (1993)
Oliver EVANS
v.
Kenny TRADER, Individually and in His Official Capacity as a Police Officer of the City of Greenville, Mississippi, and the City of Greenville, Mississippi.
No. 90-CA-920.
Supreme Court of Mississippi.
January 21, 1993.
Rehearing Denied March 25, 1993.
Ellis Turnage, Morris & Turnage, Cleveland, for appellant.
G. Kenner Ellis, Jr., Greenville, for appellees.
Before HAWKINS, C.J., and BANKS and McRAE, JJ.
McRAE, Justice, for the Court:
Oliver Evans appeals from an order entered on August 23, 1990, by the Circuit Court of Washington County granting summary judgment in favor of the defendants, Kenny Trader, a Greenville police officer, and the City of Greenville, and dismissing his personal injury action against both defendants with prejudice. We find that the trial court erred in granting summary judgment in favor of defendant Trader because Evans' claim embodied genuine issues of fact which a circuit court was not at liberty to resolve. Evans does not argue against the grant of summary judgment in favor of the City. Accordingly, we reverse in part and affirm in part.

I.
On October 9, 1989, Evans filed a complaint alleging that Trader, while acting within the course and scope of his employment and while engaged in the performance of his official duties, committed certain acts of aggression while arresting Evans. This resulted in the infliction of a hairline fracture to Evans' second cervical vertebra. The defendants moved for summary judgment, and both parties introduced affidavits and depositions to support their respective positions.
The parties agreed that Evans' neck injury was sustained at a time when Evans was under arrest and attempting to flee. Apart from these fundamental facts, Evans' account differs sharply from that of Officer Trader. According to Evans, he left work on October 20, 1988, at about 2:00 *956 a.m. and drove to the home of Flora Thomas, a female companion. Later Evans took Thomas to Jim Boy's, a store at 1400 Nelson in Greenville, to get something to eat. Evans testified that he stayed in the car while Thomas went in the store. After Thomas emerged from the store and got back in the car, a police car pulled up behind him with flashing lights. Evans stated that he had not yet pulled away from the store when the policeman stopped him.
Officer Trader asked Evans for his drivers license, but Evans told him that he did not have his license with him. Evans testified that he had a Texas license, but he did not know where the license was at the time. Instead, he gave Trader a Veterans' Administration card bearing his social security number. Upon checking with the National Crime Information Center, Trader discovered that Evans had once possessed a Mississippi license but that the Mississippi license was suspended. Trader arrested Evans for driving with a suspended license. According to Evans, Trader cursed him, saying, "`Well, I ain't bullshitting with you, you know, boy.' He say, `I take your ass down to jail right now.'"
Evans states that after being handcuffed, he remembered that he had left some money in his car. While reaching in to get it, Trader violently shoved him up against the side of the car. Trader shoved him again after he retrieved the money and emerged from the car. A verbal exchange concerning the Texas license ensued while Evans and Trader walked toward the police car, and Trader continued to shove Evans. At this point, Evans testified that
I spun away from him. Although I still had handcuffs on, I still, you know, resisted him, you know, pushing me. It became a shoving match. Well, it really wasn't too much of a shoving match because I had handcuffs on.
* * * * * *
Q. How long did that go on?
A. For two or three minutes. And the next time he came closer to me, I tried to break and run. I ran around back on the other side  the driver's side of the car. He chased me around there. Well, I came back around the other side of the car back toward the passenger side, and then I tried to run around a tree.
Q. And is that where he caught you?
A. No, He didn't catch me there. It was something like a vacant  where they had tore down a house there, it was a clean, vacant lot there. We ran over in that area. Tried to put a couple of fakes on him, you know... . The guy was running behind me, telling me I can't get away from him... . If I hadn't had any handcuffs on, I'd be gone. He couldn't have caught me, no way in the world. And he know it, too.
Evans testified that Trader soon caught up with him and threw his arm around Evans' neck in a choke hold. Then,
A. [A]ll of a sudden, the ground come up, bam. And he was right on top of  the full weight of his body just came down right in the middle of the center of my back and just pinned me all the way down to the ground. He pinned me so hard around  when he pinned me so hard like that around the neck and the force of the ground, I heard my neck say (snapped fingers), like that. I said, "I don't feel right." It wasn't  you know, it was just like a (snapped fingers), like that. I felt weak, dizzy. He helped me back off the ground after he stomped me a couple of times.
Evans claims that on the way to the police station, Trader said to him, "I told you you couldn't get away from me," and started "showing me his biceps and muscles and stuff."
Trader tells the story differently. Trader's affidavit states:
[O]n October 20, 1988, ... at approximately 2:30 A.M. while on routine patrol I saw a 1977 red automobile with Illinois license plates parked in front of a house of Muscadine Street, just north of Nelson Street, in the City of Greenville. The subject house is known for drug activity and the Nelson Street area is a high *957 crime area. The driver of the red automobile appeared to be talking to a man at the curb in front of the house, and there was also a passenger in the right front seat of the automobile.
3. As I neared the red automobile, it suddenly sped away and proceeded south on Muscadine toward Nelson. The driver was operating the vehicle erratically, and in a careless and reckless manner. I turned on my blue light, and the red automobile came to a stop at an angle to the curb after turning onto Wilzinski Street.
Trader testified in his deposition that after he discovered Evans was driving with a suspended driver's license, he performed an arrest.
4. In accordance with standard and accepted police procedure, I handcuffed Oliver Evans with his hands behind his back. Evans then requested that he be allowed to get some money from his vehicle and to close or lock the passenger door. He went to the passenger side of the vehicle and exchanged some words with the female passenger, the last of which were to the effect that "he had to go." At that point, Evans broke and ran south on Wilzinski Street. I gave chase, and Evans ran around a tree and through several residential lots. As he was running through a vacant lot near the intersection of Wilzinski and Gloster Streets, he appeared to trip or lose his balance, falling forward and face down on the ground. I lifted Evans up by his shoulders and escorted him back to my patrol car, placed him inside, and drove to the Greenville Police Station.
When Evans complained of neck pain at the police station, he was taken to Delta Medical Center and from there to the VA Hospital in Jackson. It was determined that Evans had a C-2 fracture.
Having heard the above-mentioned evidence, Circuit Judge Eugene Bogen found that there was no issue of material fact in this cause and granted the defendants' motion for summary judgment. He took as true appellant's version of the events, and disregarded Trader's version for purposes of the motion for summary judgment. He further found that Trader's actions did not suggest an assault and battery so as to take the case out of the doctrine of qualified immunity; that the actions of Trader constituted a police function and were performed in the course and scope of his employment with the Police Department; and that the City of Greenville was immune under the doctrine of sovereign immunity.

II.
Evans does not contest the sovereign immunity of the City of Greenville on appeal. He contends, however, that the trial court erred in finding that Officer Trader's actions fell within the parameters of qualified immunity as a matter of law.
Under Mississippi common law, an officer of the state enjoys only a limited immunity from tort liability. An officer has
no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort. Beyond that, a government official has no immunity when sued upon a tort that has nothing to do with his official position or decision-making function and has been committed outside the course and scope of his office.
Barrett v. Miller, 599 So.2d 559, 567 (Miss. 1992); McFadden v. State, 580 So.2d 1210 (Miss. 1991); Starnes v. Vardaman, 580 So.2d 733, 737 (Miss. 1990). According to Evans, questions of material fact exists concerning whether Trader "greatly or substantially exceeded his authority" when performing the arrest and concerning whether his injury resulted from an intentional tort on Trader's part.
The issue of whether Trader greatly or substantially exceeded his authority in arresting Evans turns on whether Trader acted reasonably in stopping Evans in the first place. See Green v. State, 348 So.2d 428 (Miss. 1977) (officer may stop automobile *958 only if he has reasonable grounds for doing so); accord United States v. Shaw, 701 F.2d 367 (5th Cir.1983). Evans contends that he was innocently parked, waiting for Flora Thomas to come out of a store. Trader, on the other hand, maintains that he stopped Evans after observing his vehicle traveling "erratically, and in a careless and reckless manner." Clearly, the conflict in the parties' accounts presents an issue of disputed fact. Further, the issue is unquestionably material since it bears upon whether Trader was acting within the scope of his authority  and thus within the bounds of qualified immunity  when he stopped and arrested Evans.
We think a genuine issue of material fact also exists concerning whether Trader perpetrated an intentional tort upon Evans. When considering a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party and give the non-movant the benefit of every doubt. See Sherrod v. United States Fidelity & Guar. Co., 518 So.2d 640, 642 (Miss. 1987); McMullan v. Geosouthern Energy Corp., 556 So.2d 1033, 1036 (Miss. 1990); Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1985). We shall assume, therefore, as did the trial court, that Trader committed the acts of which Evans accuses him. The real issue which confronts us at this juncture, assuming that Trader did in fact stop the fleeing Evans with a choke hold and landed on his back when he fell, is whether the act was necessary for law enforcement purposes or whether the force employed was so excessive as to tear away the shield of qualified immunity. In order to surmount Trader's immunity defense, Evans need not show that Trader entertained a specific intent to injure him. It would suffice to show that Trader acted with wanton and reckless disregard for Evans' safety. See McFadden v. State, 542 So.2d 871, 881 (Miss. 1989) (qualified immunity does not extend to acts committed with gross neglect or reckless indifference to plaintiff's well being). We realize, of course, that law enforcement officials are due the benefit of the doubt in cases where degrees of force are at issue.
In Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1872, 104 L.Ed.2d 443, 455-56 (1989), the U.S. Supreme Court observed:
The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 visions of hindsight... . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments  in circumstances that are tense, uncertain, and rapidly evolving  about the amount of force that is necessary in a particular situation.
Nevertheless, we can hardly say as a matter of law that Trader did not engage in conduct which rose to the level of gross negligence or reckless indifference to Evans' well being.
Since genuine issues of material fact exist concerning whether Officer Trader is protected from liability by the doctrine of qualified immunity, the trial court erred in granting summary judgment in his favor. Accordingly, we reverse the grant of summary judgment in Trader's favor and remand. Since Evans has not presented us with an argument against the grant of summary judgment in favor of the City of Greenville, we affirm that aspect of the trial court's ruling.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, ROBERTS and SMITH, JJ., concur.