# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2009-CA-00928-SCT

***CITY OF JACKSON, MISSISSIPPI AND JACKSON POLICE DEPARTMENT***

***v.***

***EDNA HARRIS, INDIVIDUALLY AND AS ADMINISTRATRIX OF THE ESTATE OF DESMONDE HARRIS AND JAMES HARRIS, INDIVIDUALLY***

| | |
|---|---|
| DATE OF JUDGMENT: | 04/28/2009 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | KIMBERLY BANKS |
| | PIETER JOHN TEEUWISSEN |
| | CLAIRE B. HAWKINS |
| ATTORNEYS FOR APPELLEE: | CHARLES R. MULLINS |
| | MERRIDA COXWELL |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 08/05/2010 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.    The City of Jackson[1] appeals from a final judgment in favor of the wrongful-death

beneficiaries of Desmonde Harris, who died in a motor-vehicle accident involving a Jackson

police officer.  The City of Jackson asserts that the Mississippi Tort Claims Act (MTCA)

---

[1]The "City of Jackson" includes the municipality of Jackson, the Jackson Police Department, and Officer Jeffrey Middleton in his official capacity.

precludes liability in this case because Harris's death was the result of culpable-negligence manslaughter. Alternatively, the City of Jackson argues that the trial judge erred in finding it was the sole proximate cause of Harris's death and in awarding the wrongful-death beneficiaries $500,000 in damages. Finding no merit in these arguments, we affirm the trial court's judgment.

## FACTS

¶2. Edna[2] and James Harris ("Beneficiaries") filed a wrongful-death suit against the City of Jackson, alleging that it was liable for the grossly negligent and reckless driving of its employee, Officer Jeffrey Middleton.[3] The Beneficiaries alleged that Middleton was acting in the course and scope of his employment when he operated his 1999 white Crown Victoria at an excessive speed, without a siren or flashing flights, and collided with Harris's 2000 red Pontiac Grand Am. The Beneficiaries alleged that Middleton's conduct was the sole proximate cause of Harris's death.

¶3. The City of Jackson filed its answer, in which it raised the affirmative defense of immunity under the MTCA. The City of Jackson also moved for summary judgment, claiming immunity under the MTCA. Notably, the City of Jackson listed the following undisputed facts: At the time of the accident, (1) Middleton was a Jackson police officer

---

[2]Edna Harris filed the complaint in her individual capacity and as the administratrix of the Estate of Desmonde Harris.

[3]The Beneficiaries sued Middleton in his individual and official capacity. Prior to final judgment, Middleton was dismissed in his individual capacity.

driving a City of Jackson patrol car; (2) Middleton struck Harris's car as Harris was attempting to turn left from Highway 18 onto Siwell Road; and (3) Middleton did not activate his blue lights and siren.

¶4. The City of Jackson argued that it was immune from liability, because Middleton had pleaded guilty to culpable-negligence manslaughter for the death of Harris and had been ordered to serve two years in the custody of the Mississippi Department of Corrections. The City of Jackson further argued that Middleton could not be acting in the course and scope of his employment if his conduct constituted the crime of culpable-negligence manslaughter.

¶5. In response, the Beneficiaries argued that Middleton's conduct was within the course and scope of his employment under Mississippi Code Section 11-46-5(2). The Beneficiaries also argued that Middleton had acted with reckless disregard for the safety and well-being of Harris, who was not engaged in criminal activity at the time of the accident.

¶6. The trial judge denied the motion for summary judgment, and the case proceeded to a bench trial. The trial judge heard testimony from six individuals who had witnessed the accident. James Noble testified that, on the evening of June 11, 2005, he and his girlfriend were driving approximately 65 miles per hour on Highway 18 when a Jackson police car passed them like they were "sitting still." According to Noble, he and his girlfriend were about a quarter of a mile from a stop light when the officer passed them, and the light was yellow at that time. Noble stated that, in his opinion, the patrol car was traveling at least 100 miles per hour.

3

¶7. Noble testified that the light turned red and had been red for approximately twenty-to-thirty seconds when the police car entered the intersection against the red light and "t-boned" the passenger side of a red car that was attempting to turn left. Noble stated that the patrol car had no emergency lights or siren activated. Noble also testified that he did not see any brake lights on the squad car until it hit the red car. Noble testified that, upon impact, the rear end of the squad car lifted approximately six or eight feet into the air. Noble stated that he had checked on the drivers of both cars and found the officer breathing, but the driver of the red car had no pulse.

¶8. Kelly Steverson testified that on June 11, 2005, she was traveling from Raymond to Jackson with her boyfriend and sister, and her speed was approximately 65 miles per hour. Steverson stated that a patrol car passed her like she was "sitting still," and that in her opinion, the car had exceeded 100 miles per hour. Steverson stated that she did not see any blue lights or hear an emergency siren. Steverson testified that the traffic signal was red when the officer entered the intersection, and that she did not see any brake lights before the collision.

¶9. Andrew Slade testified that he was traveling west on Highway 18 when a squad car passed him at a high rate of speed. Slade testified that the squad car had not activated its blue lights or siren, and he believed that the car was traveling in excess of 100 miles per hour. Slade stated that he did not see the collision, but when he topped the hill leading to the intersection, he saw there was an accident and a red light.

4

¶10.    Bobbie Slade testified that she was traveling with her husband on Highway 18 toward Jackson. She stated that a police car "flew past" and was going more than 100 miles per hour without any blue lights or a siren. Slade testified she did not see the collision, but that she had checked on the occupants of both cars when she arrived at the scene. Slade testified that she had thought both occupants were dead.

¶11.    Michelle Feazell testified that she was traveling on Highway 18 when a squad car passed her. Feazell stated that she was slowing down for the yellow signal light when the officer passed her car. She testified that the light was red when the officer entered the intersection and hit a red car as it was trying to make a left turn. Feazell also stated that the officer had not activated any lights or a siren, and that the intersection was lit with street lights. Feazell testified that she checked only on the officer, who was unconscious.

¶12.    Kawanda Allen testified that she was riding with her cousin, Feazell, when a squad car passed them at a high speed, shaking their car. Allen stated that she did not see any blue lights or hear a siren. According to Allen, they were about fifty to sixty yards from the intersection when the squad car passed them. Allen stated that the light was red when the squad car entered the intersection.

¶13.    Jeffrey Middleton testified that in June 2005, he was working the 2 p.m.-to-10 p.m. shift. On the night of the accident, he had responded to a traffic incident involving a drunk driver. He had transported the impaired driver to the Hinds County Correctional Facility and had left the facility a few minutes after 10 p.m. to head to the hospital, where the other driver was being treated.

¶14. Middleton testified that it was a cool, clear night and that traffic was extremely light on Highway 18. Middleton stated that he only remembers seeing a red car turning in front of him and a traffic signal showing a green light. Middleton testified that he suffered a head injury in the accident and as a result, could not remember any other details of that night. He also stated that he was on overtime at the time of accident. Middleton testified he was terminated from his job because of the accident, and that he had pleaded guilty to culpable-negligence manslaughter for Harris's death.

¶15. Sergeant Samuel Gardner with the Jackson Police Department conducted an internal affairs investigation regarding the accident. Gardner testified that he had concluded Middleton was on duty at the time of accident and that Middleton had committed offenses including careless driving and homicide. Sergeant Joseph Cotton testified as an expert in the field of accident reconstruction.[4] He stated that Middleton's preimpact speed was 98 miles per hour and his impact speed was 87 miles per hour. Cotton also stated that the road bore preimpact skid marks, indicating that Middleton had activated his brakes.

¶16. The trial court also heard testimony from Edna and James Harris, who testified about the loss of their son. Edna and James testified that James was their youngest child and only son, who was twenty-three at the time of his death. Edna stated that Harris had graduated from high school and had finished trade school to be a barber. Edna stated that Harris had

---

[4]The Beneficiaries admitted into evidence a report written by Sergeant Cotton, in which he concluded that Middleton had had a red light and Harris had had a green arrow. In his report, Cotton also concluded that the preimpact speed of the police car was either 98 or 99 miles per hour.

planned to open a barber shop with his sister, who is a beautician. Edna also testified that

the funeral costs were $7,037 and the headstone cost $636.

¶17. The trial court accepted James Koerber as an expert witness in the field of tax,

economics, and finance.[5] Koerber testified that he calculated Harris's lost earnings to be

$345,000. Koerber testified that Harris had a life expectancy of 53.1 years, with an annual

wage of $21,420 as a barber in Mississippi. Koerber also stated that he had used a

consumption factor of 49.33 percent in his calculations. Koerber testified that he had relied

upon methods and calculations that are generally accepted within the economic community.

¶18. After the trial, the judge entered his findings of fact and conclusions of law and final

judgment. The judge found that Harris was not engaged in any criminal activity at the time

of his death and that he was traveling south on Highway 18, attempting to make a left turn

on a green arrow. He further found that Middleton had entered the intersection against a red

light with a preimpact speed of 99 miles per hour and an impact speed of 87 miles per hour.

The judge found that Harris had been afforded no opportunity to avoid the accident, due to

Middleton's speed. He concluded that Middleton had been acting in the course and scope

of his employment when he recklessly disregarded the safety of others and caused Harris's

death. The judge ruled that the Beneficiaries were entitled to damages for loss of society and

companionship, and he also accepted Koerber's testimony that Harris's lost earnings

---

[5]Koerber testified on behalf of the Beneficiaries. The State did not offer any expert witnesses.

amounted to $345,000. The judge awarded the Beneficiaries $500,000 in compensatory damages.

## DISCUSSION

I.     **Whether the MTCA precludes liability against a governmental entity where the employee's conduct constituted a criminal offense.**

¶19.    "Immunity is a question of law[,]" and this Court conducts a de novo review of the application of the MTCA.[6] Furthermore, "[a] circuit court judge sitting without a trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported by substantial, credible, and reliable evidence."[7]

¶20.    The City of Jackson argues that the MTCA waives immunity under certain limited circumstances, and that no waiver exists under Mississippi Code Section 11-46-7(2) for a criminal offense. It argues that an employee cannot be acting in the course and scope of employment when the employee's actions constitute culpable-negligence manslaughter. In support of its argument, the City of Jackson cites *L.T. ex rel. Hollins v. City of Jackson*[8] and *City of Jackson v. Powell*.[9]

---

[6]*Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (Miss. 2003).

[7]*Id.* The City of Jackson argues that this Court should afford less deference to the trial judge's findings of fact because he adopted verbatim the findings of fact and conclusions of law submitted by the Beneficiaries. But the record does not contain the findings of fact and conclusions of law submitted by each party. In fact, this Court denied the City of Jackson's motion to expand the record to include the findings of fact and conclusions of law submitted by each party. Therefore, we will apply a manifest-error standard of review.

[8]*L.T. ex rel. Hollins v. City of Jackson*, 145 F. Supp. 2d 750 (S.D. Miss. 2000).

[9]*City of Jackson v. Powell*, 917 So. 2d 750 (2005).

8

¶21.    In *L.T. ex rel. Hollins*, the district court held that the City of Jackson was not liable for the actions of an on-duty police officer who had sexually assaulted a young woman.[10] The court found that the officer's sexual misconduct was not in furtherance of the employer's business so as to be within the scope and course of employment.[11]  Likewise, in *Powell*, this Court found the City of Jackson immune from liability where a police officer acted with malice by using excessive force on an arrestee.[12]  The Court interpreted Mississippi Code Sections 11-46-5(2) and 11-46-7(2) and found that the employee had acted outside the scope and course of employment by acting with malice.[13]

¶22.    Conversely, the Beneficiaries argue that *L.T. ex rel. Hollins* and *Powell* are distinguishable, because the governmental employees in those cases committed intentional torts, not traffic offenses.  The Beneficiaries argue that the City of Jackson fails to cite Mississippi Code Section 11-46-5(2), which waives immunity for traffic violations that constitute criminal offenses.[14]  The Beneficiaries further argue that the phrase "culpable negligence" is synonymous with "reckless disregard" under the MTCA.

---

[10]*L.T. ex rel. Hollins*, 145 F. Supp. 2d at 757.

[11]*Id.*

[12]*Powell*, 917 So. 2d at 72-73.

[13]*Id*. at 72-73.

[14]*See* Miss. Code Ann. § 11-46-5(2) (Rev. 2002).

9

¶23.     Under Mississippi Code Section 11-46-7, the MTCA provides the exclusive civil remedy for tort actions against the state, its political subdivisions, and its employees.[15] Section 11-46-7 further provides that:

> For the purposes of this chapter, an employee shall not be considered as acting in the course and scope of his employment and *a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.*[16]

However, Mississippi Code Section 11-46-5 provides that:

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope his employment and *a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.*[17]

¶24.     We find that the City of Jackson is liable for Middleton's conduct under the plain language of Section 11-46-5(2).  While Section 11-46-7(2) provides immunity for "criminal offenses," Section 11-46-5(2) specifically excludes "traffic offenses" from this immunity. Middleton's guilty plea to culpable-negligence manslaughter does not change the fact that Middleton caused Harris's death by violating the traffic laws of this state.  Middleton's conduct constituted speeding and running a red light, traffic offenses that are misdemeanors

---

[15]Miss. Code Ann. § 11-46-7(1) (Rev. 2002).

[16]Miss. Code Ann. § 11-46-7(2) (Rev. 2002) (emphasis added).

[17]Miss. Code Ann. § 11-46-5(2) (Rev. 2002) (emphasis added).

(and, as such, "criminal offenses") under our Code.[18]  Furthermore, "[n]o driver of any authorized emergency vehicle shall assume any special privilege . . . except when such vehicle is operated in response to an emergency call or in the immediate pursuit of an actual or suspected violator of the law."[19]  It is undisputed that Middleton was not operating his vehicle in response to any emergency or in pursuit of a suspect, but that he was traveling to the hospital to provide insurance information to an injured driver.

¶25.    Furthermore, we agree with the Beneficiaries that *L.T. ex rel. Hollins* and *Powell* are distinguishable, as those cases do not involve any type of traffic violation.  This Court has upheld governmental liability in cases where its officers have committed traffic offenses resulting in motor-vehicle accidents.[20]  In these cases, the Court analyzed another provision of the MTCA, Mississippi Code Section 11-46-9, which specifically addresses police conduct and provides that:

---

[18]*See* Miss. Code Ann. § 63-3-201 (Rev. 2004) (declaring that breach of traffic offenses and rules of the road are misdemeanors); Miss. Code Ann. § 63-3-309 (Rev. 2004) (declaring that drivers must obey traffic lights); Miss. Code Ann. § 63-3-501 (Rev. 2004) (declaring that "no person shall operate a vehicle on the highways of the state at a speed greater than sixty-five (65) miles per hour").

[19]Miss. Code Ann. § 63-3-205 (Rev. 2004).

[20]*See* **Miss. Dep't of Public Safety v. Durn**, 861 So. 2d 990 (Miss. 2003) (finding state trooper acted in reckless disregard of safety of others by traveling at excessive speed in area of limited visibility and numerous businesses); **City of Jackson v. Perry**, 764 So. 2d 373 (Miss. 2000) (finding City of Jackson police officer acted with reckless disregard for safety of others by speeding without use of sirens or blue lights en route to dinner); **Maye v. Pearl River County**, 758 So. 2d 391 (Miss. 1999) (finding sheriff acted with reckless disregard for safety of others by backing his patrol car up an incline to the entrance of a parking lot without being able to see incoming traffic).

(1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim . . . .

. . .

(c) Arising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection *unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury.*[21]

The Court, in **Turner v. City of Ruleville**, announced the following definition of "reckless disregard":

> While we agree that reckless disregard would encompass gross negligence, we hold that reckless disregard is a higher standard than gross negligence by which to judge the conduct of officers.
>
> "Disregard" of the safety of others is at least negligence if not gross negligence. Because "reckless" precedes "disregard," the standard is elevated . . . "reckless," according to the circumstances, "may mean desperately heedless, wanton or willful, *or* it may mean only careless, inattentive or negligence." [*Black's Law Dictionary* 1270 (6th ed. 1991)]. In the context of the statute, reckless must connote "wanton or willful," because immunity lies for negligence. And this Court has held that "wanton" and "reckless disregard"are just a step below specific intent. *See Evans v. Trader*, 614 So. 2d 955, 958 (Miss. 1993). The Court held in *Evans* that in order to defeat an immunity defense under the common law, the plaintiff would have to show that the officer entertained a specific intent. "It would suffice to show that [the officer] acted with wanton and reckless disregard for [the plaintiff's] safety."[22]

¶26. Notably, the term "reckless disregard" has a similar definition to culpable-negligence manslaughter. In **Chandler v. State**, this Court defined culpable-negligence manslaughter as:

---

[21]Miss. Code Ann. § 11-46-9(1)(c) (Rev. 2002) (emphasis added).

[22]**Turner v. City of Ruleville**, 735 So. 2d 226, 230 (Miss. 1999); *see also* **Maye v. Pearl River County**, 758 So. 2d 391, 394-95 (Miss. 1999) (quoting the Fifth Circuit Court of Appeals' definition of "reckless disregard").

12

"'[T]he conscious and wanton or reckless disregard of the probabilities of fatal consequences to others as a result of the wilful creation of an unreasonable risk thereof.'" *Evans v. State*, 562 So. 2d 91, 94 (Miss. 1990) (citing *Smith v. State*, 197 Miss. 802, 20 So. 2d 701, 701 (1945)). This Court more recently defined manslaughter by culpable negligence as "such gross negligence . . . as to evince a wanton or reckless disregard for the safety of human life, or such an indifference to the consequences of an act under the surrounding circumstances as to render such conduct tantamount to willfulness." *Shumpert v. State*, 935 So. 2d 962, 967 (Miss. 2006) (citing *Evans v. State*, 562 So. 2d 91, 95 (Miss. 1990)).[23]

¶27. We find that substantial evidence supports the trial judge's findings that Middleton was on duty and responding to a non-emergency call when he drove approximately 98 miles per hour through a red light as Harris was attempting to make a left-hand turn. Every witness (except Middleton) testified that Middleton had been driving at an excessive speed without his emergency lights or siren. Several witnesses saw the collision and testified that Middleton had disregarded a red light when he had proceeded through the intersection and collided with Harris. Furthermore, the City of Jackson did not argue at trial or on appeal that Harris was engaged in any criminal activity at the time of the accident. So we agree with the trial court that Middleton acted with reckless disregard for the safety of others under Section 11-46-9(1)(c). His actions fall within the definition of reckless disregard pronounced by this Court in the *City of Ruleville*. As such, the trial court was correct in holding the City of Jackson liable for Middleton's actions that occurred in the course and scope of his employment.

---

[23]*Chandler v. State*, 946 So. 2d 355, 361 (Miss. 2006).

**II.** **Whether the trial court erred in failing to make a finding of contributory negligence and in assessing a damages award of $500,000.**

¶28. The City of Jackson argues it established that Harris was a proximate contributing cause of the accident, and that the trial judge should have apportioned fault. It argues that Harris was contributarily negligent because he violated Mississippi Code Sections 63-3-805 and 63-3-505. It further argues that the Court erred in awarding damages in the amount of $500,000. Conversely, the Beneficiaries argue the trial judge's findings are entitled to deference and that these code sections support the City of Jackson's liability.[24]

¶29. The City of Jackson did not argue Section 63-3-505 before the trial court, and as such, it is procedurally barred from raising this argument on appeal.[25] But the City of Jackson did argue Harris's liability under Section 63-3-805, which provides in relevant part that:

> The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right-of-way to other vehicles which have entered the intersection from said through highway or which are approaching so closely on said through highway as to constitute an immediate hazard.[26]

¶30. The trial judge found that Harris had entered the intersection on a green arrow and could not have avoided the collision. The trial judge further found that Middleton was solely at fault in speeding through the intersection against a red light. The trial judge's findings

---

[24]*See* Miss. Code Ann. §§ 63-3-505, 63-3-805 (Rev. 2004).

[25]*See* ***Miss. Mun. Liability Plan v. Jordan***, 863 So. 2d 934, 940 (Miss. 2003) ("[W]here a party fails to raise an issue before the trial court, we are procedurally barred from considering that issue.").

[26]Miss. Code Ann. § 63-3-805 (Rev. 2004).

14

show that Middleton, not Harris, violated Section 63-3-805. The trial judge's findings of fact are entitled to a manifest-error standard of review, and we cannot say the trial judge manifestly erred in assigning 100 percent of the fault to the City of Jackson. Furthermore, the City of Jackson is procedurally barred from contesting the award of $500,000, because it failed to cite any authority in support of this assignment of error.[27]

## CONCLUSION

¶31.   We affirm the trial court's judgment and hold that the City of Jackson is liable to the Beneficiaries in the amount of $500,000.

¶32.   **AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., DICKINSON, RANDOLPH, CHANDLER AND PIERCE, JJ., CONCUR.   GRAVES, P.J., AND KITCHENS, J., NOT PARTICIPATING.**

---

[27]*See **McNeil v. Hester**, 753 So. 2d 1057, 1075 (Miss. 2000); *see also* Miss. R. App. P. 28(a)(6) ("The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons for those contentions, with citations to the authorities, statutes and parts of the record relied on.").