# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-CA-01133-COA

**KIM ROGERS**                                                          **APPELLANT**

**v.**

**CITY OF LUMBERTON**                                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/15/2023 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. LAWRENCE JR. |
| ATTORNEYS FOR APPELLEE: | R. LANE DOSSETT |
| | L. CLARK HICKS JR. |
| NATURE OF THE CASE: | CIVIL - PROPERTY DAMAGE |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 04/01/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE WILSON, P.J., LAWRENCE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1.     Kim Rogers filed a complaint in the Lamar County Circuit Court against the City of Lumberton seeking damages she suffered, which she contends were caused by the City's sewage system. After the circuit court granted the City's motion to dismiss, Rogers perfected this appeal.

## FACTS AND PROCEDURAL HISTORY

¶2.     Rogers' complaint generally described how, between June 7, 2020, and March 8, 2021, her residence was flooded, on multiple occasions, with raw sewage due to the

malfunction of a sewer lift station operated by the City.[1] According to a written statement from Lumberton's mayor, Quincy Rogers, dated August 11, 2021, he claimed that he received a phone call from Rogers on June 7, 2020, stating that "her home was flooding due to rain water which was mixed with raw sewage" caused by Tropical Storm Cristobal. The mayor's statement further described the actions that he took on the evening of June 7 to assist Rogers as follows:

> I called [the] public works department[,] Butch Brumfield[,] which was the on employee for the weekend in question. Moments after leaving home[,] I met with Mr. Brumfield and asked if the city's lift station that was behind the home[s] of Mr. and Mrs. Walter and Kim Rogers had been checked and the employee in question stated that he was on his way to check it at the Pecan Ridge apartment complex. After arriving at Mrs. Rogers' home, water had covered the entire back po[r]tion of her home. I then started to as[s]ist in getting water up with shopvacs with help from Mrs. Rogers' son-in-law. Public works employee Butch Brumfield arrived later at Mrs. Rogers' home with employee Alex Grant. I asked if the lift station was working and Butch Brumfield stated that no, the light was bl[i]nking due to the amount of rainfall from the tropical storm. After leaving Mrs. Rogers' home between the hours of 11:45 pm to 12:00 am [on] 6-8-20[,] Mrs. Rogers called my home and stated that her home flooded again after I left her home.[2]

¶3. Approximately eight months after the event described by the mayor, Rogers obtained

---

[1] The record on appeal contains no testimony or affidavits from which we can glean the facts of this case. Instead, we must rely upon the pleadings and exhibits that were made a part of the record.

[2] The mayor's written statement was filed on September 26, 2023, along with fifteen other exhibits related to the September 11, 2023 hearing on the City's renewed motion to dismiss Rogers' complaint. While there is a short two-page transcript dated September 11, 2023, the transcript merely memorializes the circuit court's ruling and allowed Rogers' attorney to "file with the court for purposes of appeal all of the matters that he believes supports his arguments." Because there was no testimony given at the September 11, 2023 hearing, this opinion heavily relies on the sixteen exhibits filed with the circuit court.

2

an estimate for the damage sustained to her home from the sewage flooding. The estimate dated February 1, 2021, stated:

> After personally inspecting and discovering the details of what occurred at the subject property, my recommendation is to have a hazmat team come in to remove all contents in the home and stripping/gutting the home, leaving only the studs and ceiling joists, and then sanitizing the remaining construction of the home. After this process is completed, I will be willing to come back to reassess the condition and give an estimate to complete the job. At the present time, I cannot estimate the costs of the job requested.

¶4. Pursuant to an email dated January 28, 2021, from Gary Hickman of O'Neal-Bond Engineering Inc. (after he had completed an engineering analysis), the issue of the City's storm water collection system was placed on the agenda for the February 2, 2021, meeting of the mayor and Board of Aldermen. More specifically, Hickman requested a discussion of the drainage basin that outflows under 10th Avenue between South 1st Street and South 2nd Street at the "school campus." According to the Board's minutes, the drainage issues and Rogers' property were discussed, and the minutes reflect as follows: "Upon motion made by Alderwoman-at-large Speights and seconded by Alderwoman Davis, and after a full discussion a unanimous vote thereon: Item Number 7: Order to discuss results in regards to Ms. Kim Rogers' property - This item was tabled due to further information needed."

¶5. On March 8, 2021, Rogers provided the City with a letter and an invoice outlining the needed materials and costs associated with vacating her property so that cleanup and repairs could begin. Rogers' invoice requested that the City issue a check in the amount of $13,597.00 within thirty days of receipt of the invoice. The City issued Rogers a check for

$13,597.00 on March 11, 2021; however, nothing in the record indicates where, when, or how the Board approved the payment.

¶6. On May 25, 2021, Attorney Charles Lawrence Jr. mailed a letter to the mayor on behalf of Rogers stating that Rogers had requested his assistance in pursuing her claim with the City for damage caused to her home. Lawrence advised the mayor that time was of the essence in having Rogers' home repaired and asked the City not only to make the necessary repairs to Rogers' home, but also to consider compensation for the inconvenience caused as a result of the problem and the loss of use and enjoyment of her home.

¶7. The City responded to Lawrence's letter on June 28, 2021. In the response addressed to Rogers, the City outlined the actions it had taken in an effort to remedy the sewer problem and assist Rogers in being able to return to her residence. The City invited Rogers and her attorney to contact the City if they had any further questions.

¶8. Rogers believed that the City had agreed to fix the sewage problem and restore her home to a habitable condition. When the City did not perform the repairs as she expected, Rogers filed her complaint against the City on April 1, 2022. In this complaint, Rogers sought damages from the City in Claim I for inverse condemnation in violation of Article 3, Section 17 of the Mississippi Constitution, in Claim II for breach of contract, and in Claim III for negligence.

¶9. Rather than filing an answer to the complaint, on April 13, 2022, the City removed the action to the United States District Court for the Southern District of Mississippi, Eastern

4

Division. By an order dated March 13, 2023, the federal court granted the City's motion to dismiss Rogers' federal law claims, but the court denied the motion as to Rogers' state law claims and remanded the action to the Circuit Court of Lamar County, Mississippi.

¶10. On March 14, 2023, the City filed "Defendant's Renewed Motion to Dismiss" in the circuit court, along with a memorandum in support of its motion. In this motion, the City sought to have the circuit court dismiss Rogers' remaining claims because (1) she failed to provide pre-suit notice as required by Mississippi Code Annotated section 11-46-11 (Rev. 2019); (2) her state law claims are barred by the one-year statute of limitations, as provided by the Mississippi Tort Claims Act (MTCA), Miss. Code Ann. §§ 11-46-1 to -23 (Rev. 2019); and (3) there is no enforceable contract. Rogers never filed a written response to this motion.

¶11. The motion was first heard on June 16, 2023; however, no transcript of the hearing is in the record on appeal. In any event, as a result of the hearing, the circuit court entered an order on June 29, 2023, giving Rogers "thirty days to conduct discovery on the issues raised in the Renewed Motion to Dismiss." Rogers then caused a subpoena duces tecum to be issued to the City clerk, requiring her to produce for inspection, examination, and duplication of any and all documents relating to the malfunction of the Turnkey Housing sewer lift station between January 1, 2021, and March 31, 2021.

¶12. On August 17, 2023, the City filed "Defendant's Supplemental to Motion to Dismiss" in which the City argued that the documents sought and obtained by Rogers' subpoena

provided no evidence of a contract to support her claim. The City restated its position that the contract claim should be dismissed because there is no contract and that the tort claims should be dismissed because Rogers failed to provide the statutorily required notice.

¶13. The renewed motion to dismiss was heard on September 11, 2023. Apparently, there was an off-the-record meeting between both counsel and the trial judge. The record shows that the court simply ruled from the bench when granting the City's motion to dismiss. Rogers' counsel was given the opportunity to file exhibits that supported her position. Sixteen exhibits were admitted on Rogers' behalf. The order granting the City's motion to dismiss was entered on September 15, 2023. In the order, the court dismissed the complaint, finding that Rogers had not given notice in compliance with section 11-46-11(2) and that Rogers had failed to present sufficient proof to establish a contract with the City. Aggrieved, Rogers appealed.

**STANDARD OF REVIEW**

¶14. In *Deere v. Taylor*, 394 So. 3d 991, 995 (¶18) (Miss. Ct. App. 2024), this Court stated, "The standard of review for a trial court's grant or denial of a motion to dismiss is de novo." (Quoting *Long v. Vitkauskas*, 228 So. 3d 302, 304 (¶5) (Miss. 2017)). In *Ostrowski v. City of D'Iberville*, 269 So. 3d 418, 420 (¶6) (Miss. Ct. App. 2018), this Court held, "We also use a de novo standard of review regarding the application of the MTCA." (Citing *City of Jackson v. Harris*, 44 So. 3d 927, 931 (¶19) (Miss. 2010)).

**ANALYSIS**

6

¶15.   Rogers raises three issues on appeal, which we will address separately below:

> **I.     Did the circuit court err in dismissing Rogers' negligence claim due to a lack of pre-suit notice, as required by the MTCA?**

¶16.   The circuit court dismissed Rogers' complaint, partly because Rogers failed to comply with the pre-suit notice requirements of the MTCA.  In section 11-46-11, the MTCA provides in part:

> (1)    After all procedures within a governmental entity have been exhausted, any person having a claim under this chapter shall proceed as he might in any action at law or in equity, except that at least ninety (90) days before instituting suit, the person must file a notice of claim with the chief executive officer of the governmental entity.
>
> (2)    (a) Service of notice of claim shall be made as follows:
>
>> (i) For local governments:
>>
>>> 1.     If the governmental entity is a county, then upon the chancery clerk of the county sued;
>>>
>>> 2.     If the governmental entity is a municipality, then upon the city clerk.
>>
>> . . . .
>
>> (b) Every notice of claim shall:
>>
>>> (i)     Be in writing;
>>>
>>> (ii)    Be delivered in person or by registered or certified United States mail; and
>>>
>>> (iii)   Contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the

7

> extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought, and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

Miss. Code Ann. § 11-46-11(1)-(2).

¶17. The circuit court's order treated the letter from Lawrence to the mayor, dated May 25, 2021, as the pre-suit notice letter. However, in Rogers' brief, she states that this letter "was never intended to be a notice letter under the Tort Claims Act." Instead, Rogers contends it was a letter requesting the City to "abide by the agreement which it made with the Appellant and proceed with the repairs to be made to her home."

¶18. Rogers argues that there is no requirement that the pre-suit notice be contained in a single writing or that it come from legal counsel. She cites no authority for this statement. In any event, Rogers' brief then points to the exhibits that were filed after the court's bench ruling on the motion to dismiss, which Rogers contends provided all the information needed to meet the pre-suit notice requirement:

1. A handwritten estimate from Oscar Ladner dated June 11, 2020, in the amount of $2,811.60 for the cost to repair Rogers' residence.

2. A second handwritten estimate from Ladner dated March 2, 2021 in the amount of $62,500.00 for the cost to repair Rogers' residence.

3. A letter from G P Construction Company, Inc. dated March 4, 2021, addressed to Rogers estimating the cost to repair her residence to be $80,000.

4. A handwritten note dated March 4, 2021, by Rogers detailing things she

needed while her residence was being worked on. Attached with this handwritten note was a typewritten invoice dated March 8, 2021, to the City with a charge for those items in the amount of $13,597.00.

5.      A handwritten note dated August 11, 2021, signed by the mayor wherein he details actions he took relative to the flooding of Rogers' residence on June 7-8, 2020.

While Rogers maintains on appeal that the City received these documents, no evidence in the record supports that allegation or identifies who received the documents. Rogers argues that the circuit court erred because these documents show that she substantially complied with the pre-suit notice requirement.

¶19.   It was Rogers' burden to show that she met the mandatory notice provision of the MTCA. In *Burnett v. Hinds County ex rel. Board of Supervisors*, 313 So. 3d 471, 475 (¶12) (Miss. 2020), the supreme court stated:

> This Court has held that subsection 2(a) of Section 11-46-11, providing that the notice of claim "shall" be filed with the political subdivision's chief executive officer, is mandatory with regard to who the recipient must be. *Tallahatchie Gen. Hosp. v. Howe*, 49 So. 3d 86, 91-92 (Miss. 2010). If a complainant is and remains noncompliant with that mandatory provision, the lawsuit must be dismissed. *Id*. at 92.

Rogers did not show that the mayor or the City clerk received the required notice. Further, in *Dobbs v. City of Columbus*, 285 So. 3d 1219, 1224 (¶17) (Miss. Ct. App. 2019), this Court stated:

> [T]he language of section 11-46-11 mandates strict compliance with the notice requirement. In other words, "the mandatory nature of the notice requirement is such that what the recipient may or may not actually have known is irrelevant." *Tallahatchie*, 49 So. 3d at 92 (¶17) (quoting *Arceo* [*v. Tolliver*], 19 So. 3d [67,] 72 (¶20) [(Miss. 2009]).

9

(Footnote omitted). Beyond **who** must receive the pre-suit notice, concerning substantial compliance with the contents of the notice, this Court explained in *Keever v. Mississippi Institutions of Higher Learning*, 309 So. 3d 460, 463 (¶9) (Miss. Ct. App. 2019):

> "Mississippi law requires substantial compliance with the notice provisions of the MTCA." *Marbly* [*v. Manuel*], 210 So. 3d [1033,] 1036 (¶6) [(Miss. Ct. App. 2015)]. In *South Central Regional Medical Center v. Guffy*, 930 So. 2d 1252, 1258 (¶19) (Miss. 2006), the Mississippi Supreme Court discussed what the term "substantial compliance" entailed with regard to the notice requirements.
>
>> The confusion has arisen in the discussion of Miss. Code Ann. § 11-46-11(2), as to how much information is required by this Court under each of the seven categories to comply with Miss. Code Ann. § 11-46-11(2). . . . In order to comply with this requirement, the notice need not disclose every single fact, figure and detail, but rather the substantial details, in order to comply with the requirements of [section] 11-46-11(2). But, the failure to provide any of the seven statutorily required categories of information falls short of the statutory requirement and amounts to non-compliance with Miss. Code Ann. § 11-46-11(2). However, where some information in each of the seven required categories is provided, this Court must determine whether the information is "substantial" enough to be in compliance with the statute. If it is, the result is "compliance," not "substantial compliance" with the requirements under Miss. Code Ann. § 11-46-11(2).
>
> *Id*. at 1258 (¶20). . . . "The determination of substantial compliance is a legal, though fact-sensitive, question." *Fairley v. George County*, 871 So. 2d 713, 717 (¶9) (Miss. 2004).

¶20. We find that Rogers has not shown that she properly filed a pre-suit notice of her claim with either the mayor or the City clerk that substantially complied with section 11-46-11(2)(b)(iii). None of the exhibits Rogers filed referred to "the time and place the injury

10

occurred" or even that she suffered damage within one year of April 1, 2022, which was the date she filed her complaint. No exhibit showed the amount of money sought for damages. The circuit court did not err by dismissing Rogers' negligence claims for non-compliance with the pre-suit notice requirement of the MTCA.

> **II.** **Did the circuit court err by finding that no contract existed between the City and Rogers for repairs to Rogers' residence?**

¶21. Rogers argues on appeal that the circuit court erred by dismissing her contract claim by finding that there was no contract recorded in the City's minutes. She contends:

> The trial court failed to consider as evidence of the formation of a contract or as a "memorandum or note thereof" the documentation presented to the City by Appellant, and the subsequent action of the City, which by vote, authorized the issuance of a check to the Appellant in the amount of $13,597.00, and the notation in the memo of the check that it was issued for the purpose of "damages to the home + city sewer lines 503 N. 9th Street."

She further argues that because of her detrimental reliance upon the representation of the City that her home would be repaired, equitable estoppel should be applied. However, other than the payment she received, Rogers' complaint fails to allege any specific statement or representation that was made by a specific person, on a specific date, that caused her to believe she had entered into a contract with the City or that the City had accepted any further responsibility for the repair of her residence.

¶22. We find that Rogers' claim for breach of contract was properly dismissed. In *Warnock & Associates LLC v. City of Canton*, 328 So. 3d 1254, 1262 (¶19) (Miss. Ct. App. 2021), this Court ruled:

11

> [N]o valid and binding contract was formed because Warnock failed "to ensure that 'the contract [was] legal and properly recorded on the minutes of the [B]oard [of Aldermen].'" As our Supreme Court has explained, the minutes requirement "goes to the issue of whether a contract . . . *was ever formed in the first place*." *Jackson County v. KPMG LLP*, 278 So. 3d 1124, 1127 (¶10) (Miss. 2019) (emphasis added). **Moreover, it is not the City's burden to prove that the contract was not recorded on the minutes. It was Warnock's burden—as part of its affirmative case—to show that the contract was duly recorded.** *KPMG* [*LLP v. Singing River Health Sys.*,] 283 So. 3d [662,] 674 (¶34) [(Miss. 2018)]. **As stated above, "the existence of a valid and binding contract" is one of the basic elements of a claim for breach of contract, which the plaintiff must affirmatively plead and prove as part of its case**. *Gulf Coast Hospice LLC* [*v. LHC Group Inc.*], 273 So. 3d at 743 [721,] (¶77) [(Miss. 2019)]. Conversely, the absence of a valid contract is not an affirmative defense that the defendant must plead affirmatively. *See Balder v. Lavin*, No. 2:16-CV-130-KS-MTP, 2018 WL 2976105, at *3 (S.D. Miss. June 13, 2018) ("[T]he existence of a contract is a necessary element of [a plaintiff's] breach of contract claim under Mississippi law. . . . [T]he defense that no . . . contract exists is not an affirmative defense.").

(Emphasis added). Rogers does not allege in her complaint that a written contract, approved on the City's minutes, exists.[3]

¶23. While it is clear that the City paid her $13,597.00, there is no allegation of any other commitment by the City. She alleges in her complaint that the City requested she obtain an estimate for the cost of the necessary repairs to her residence, but she states that she never obtained such an estimate. In any event, she does not allege that the City agreed to pay for any such repairs or that anyone with the City had been authorized, on the City's minutes, to

---

[3] Pursuant to Mississippi Rule of Civil Procedure 10(d), a copy of any contract should have been attached to the complaint, or "sufficient justification for its omission" should have been stated in the complaint. There was no contract or minutes for the City attached to the complaint.

make such a commitment. On appeal, she raises a claim of equitable estoppel; however, such a claim was not raised in her complaint or before the circuit court. In *Rawls Springs Utility Dist. v. Novak*, 765 So. 2d 1288, 1292 (¶13) (Miss. 2000), the supreme court stated:

> It is a "well-established rule in Mississippi that the doctrine of equitable estoppel cannot be applied against the state or its counties where the acts of their officers were unauthorized." *Oktibbeha County Bd. of Educ. v. Town of Sturgis*, 531 So. 2d 585, 589 (Miss. 1988).

There is no allegation in the complaint that either the mayor or any other City official was authorized to make, or made, any representation to her concerning the repair of her residence beyond the payment she was given. This issue is without merit.

### III. Did the circuit court err by dismissing the complaint on the issue of inverse condemnation because no tort claim notice was required when the cause of action was based upon an alleged taking in violation of Article 17, Section 13 of the Mississippi Constitution?

¶24. On appeal, Rogers contends that the MTCA does not apply to her inverse condemnation claim against the City.[4] Rogers cites *Williams v. City of Batesville*, 313 So. 3d 479 (Miss. 2021), in support of her argument. In that case, Williams filed suit against the city for damages to her home and property after the city's sewer system backed up and flooded her property. *Id*. at 481 (¶1). She alleged that the city was either negligent or deliberately failed to "properly operate, maintain, supervise, and/or design the sewer system."

---

[4] The City argues that Rogers is barred from raising this issue for the first time on appeal. Neither the City's motion to dismiss nor the circuit court's order specifically addressed Rogers' constitutional inverse condemnation claim, which is specifically set out in the complaint. We find that the issue is not procedurally barred.

13

*Id*. at (¶3). She later amended her complaint to include a constitutional claim of inverse condemnation. *Id*. The trial court granted summary judgment in favor of the city, finding that the city was immune from Williams' claim of negligence under the MTCA and that there had been no "taking" to support the inverse condemnation claim. *Id*. at 482 (¶6). On appeal, the court found:

> Because Williams may be able to prove a set of facts under the MTCA for actions by the City that are not exempt from immunity, we hold that the circuit court erred by dismissing the claims of basic negligence, and we remand the case for further proceedings. We further hold that the trial court erred by granting judgment in favor of the City as to the Williams's inverse-condemnation claim.

*Id*. at 489 (¶55). It is clear from both the trial court's ruling, and the Mississippi Supreme Court's ruling on appeal, that the MTCA negligence claim and the inverse condemnation claim were separate and distinct causes of action.

¶25. In *Sturdivant v. Coahoma County*, 303 So. 3d 1124, 1131 (¶26) (Miss. Ct. App. 2020), our Court stated:

> The Code provides no specific statute of limitations for inverse condemnation claims. The Mississippi Supreme Court has held that inverse condemnation claims are subject to the three-year statute of limitations. "Mississippi Code Annotated section 15-1-49 (Rev. 2015) is applicable to such claims which are brought under the Article 3, Section 17, Takings Clause." *City of Tupelo v. O'Callaghan*, 208 So. 3d 556, 568 (¶35) (Miss. 2017).

Because MTCA cases are subject to a one-year statute of limitations pursuant to section 11-46-11(3)(a), obviously a claim for inverse condemnation is not subject to the MTCA. Jury verdicts on inverse condemnation claims have been affirmed on appeal and are further

14

evidence that such claims are not subject to the MTCA, which requires a bench trial. *See Bay Point Props. Inc. v. Miss. Transp. Comm'n*, 304 So. 3d 606, 607 (¶2) (Miss. 2020); *State v. Murphy*, 202 So. 3d 1243, 1247 (¶1) (Miss. 2016); *Berry v. Jackson County*, 397 So. 3d 911, 919 (¶16) (Miss. Ct. App. 2024); *accord* Miss. Code Ann. § 11-46-13(1).

¶26. While Rogers' inverse condemnation claim is not specifically addressed in the circuit court's order, the order does dismiss the entire case with prejudice. We find that the circuit court erred by dismissing Rogers' inverse condemnation claim because it was not subject to the pre-suit notice provisions of the MTCA. Therefore, we reverse the circuit court's order in part as to this claim and remand the matter to the circuit court for further proceedings.

## CONCLUSION

¶27. We affirm the circuit court's dismissal of Rogers' claims of negligence and breach of contract as set forth above. However, we reverse the circuit court's dismissal of her inverse condemnation claim and remand that claim to circuit court for further proceedings consistent with this opinion.

¶28. **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR.**